CASE 48.—PROCEEDINGS IN THE POLICE COURT OF THE
CITY OF PADUCAH  AGAINST S. P. RAGSDALE
AND OTHERS UNDER A CITY ORDINANCE PRO-
HIBITING CATTLE FROM RUNNING AT LARGE IN
SAID CITY.—March 22.

## City of Paducah v. Ragsdale, &c.

Appeal from Police Court of City of Paducah.

D. L. SANDERS, Police Judge.

From the judgment the city appeals.   Reversed.

1. Municipalities—Cattle Running at Large—Ordinance Regulat-
ting—Validity—An ordinance of a city prohibiting cattle from
running at large therein, and providing for its impounding
and for its sale after due notice and publication, and also
imposing a fine on the owner for permitting his cattle to
run at large, is not invalid on the ground that it takes effect
immediately upon its passage and publication.  All ordinances
when regularly adopted are matters of public record of which
everybody must take notice.

2. Constitutionality—Embracing More than One Subject—An ordi-
nance embracing separate sections all relating to the preven-
tion of cattle running at large in a city, various features of
which are treated by different sections, is not unconstitutional
on the ground that it embraces more than one subject.

3. Presupposes Guilt of Owner—The ordinance is not invalid
because it provides that the owner of the cattle being sum-
moned, "must appear in court and show cause, if any he can,
why he shall not be fined for a violation of the ordinance,
and why the animal shall not be sold."  Such clause does not
presuppose the guilt of the owner, but merely provides that
he may be summoned so that the question of his guilt may
be tried, and his plea of "not guilty" puts the burden upon
the city to prove his guilt beyond a reasonable doubt.  If
the animal was found at large upon the streets under such
circumstances as the ordinance penalizes, it would make a
prima facie case of guilt against the owner, which has been
held to be valid i-- ~ statute.

4. Due Process of Law—Inherent Power—Such ordinance is not unconstitutional on the ground that it deprives the owner of his property without due process of law. This right is exercised under the police power inherent in government whether State or municipal. The running of cattle at large in a populous community is regarded generally as a public nuisance endangering the safety and property of the citizens, and it is competent to regulate the matter by punishing the owner as well as by proceeding in rem against the property itself.

5. Appeals—Legislative Discretion—The ordinance is not invalid because it does not provide for an appeal by the owner of the cattle. This is solely within the discretion of the legislature as the city cannot regulate the matter of appeals by ordinance.

6. Rural Stock Law—Chapter 122, Kentucky Statutes, which allows rural communities to adopt a "stock law" by vote does not apply to cities.

T. B. HARRISON and A. B. BARKLEY for appellant.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

This appeal is prosecuted under the provision of section 3063, Ky. Stat., 1903, from a judgment of the police court of Paducah, a city of the second class, declaring invalid the following ordinance duly enacted by the city's legislative department:

"An ordinance to prevent certain animals of the bovine kind from running at large in the city of Paducah.

"Be it ordained by the general council of the city of Paducah, Kentucky:

"Section 1. That no cow, calf, or other animal of the bovine kind, shall be permitted to go at large upon any of the streets, alleys, or unenclosed lots or ground in the city of Paducah. The foregoing shall not apply where such animals are being driven through the city or from one place to another, for the purpose of

being slaughtered, or to be placed in any pen or enclosure. Should any such animal be found going at large in violation of this ordinance, the same may be taken up by any policeman, or other person appointed by the chief of police, and taken to some place provided by the city, for the confinement of such animals, and there kept until released by law or under the provisions of this ordinance.

"Sec. 2. The officer taking up any animal under the last section shall forthwith make a statement of the fact in writing under oath, stating the name of the owner, if known, and file said statement in the Paducah city court, where it shall be kept as part of the record of said court. If said statement shall disclose the name of the owner of such animal, the judge of said court shall issue a summons against said owner, commanding him to appear in said court to show cause, if any he can, why he shall not be fined $5 for violation of the preceding section, and why such animal shall not be sold to satisfy the cost and charges of taking up, keeping or selling same. If said affidavit shall state that the owner of such animal is unknown, or absent from McCracken county, Kentucky, the court shall make a warning order on said affidavit, warning said owner to appear in said court within five days after that date and show cause why such animal shall not be sold to satisfy the cost and charges of taking up, keeping and selling such animal; and the court shall appoint a regular practicing attorney in said court to defend for such absent or unknown owner. If, when such owner has been duly summoned or warned as herein provided, the court shall determine that there has been a violation of said section by such animal having run at large within the

limits of said city, then the court shall make an order describing said animal and the mark thereon, and direct the chief of police to sell same at public outcry to the highest bidder for cash in hand. The chief of police shall sell such animal, and out of the proceeds pay the costs and charges of such proceedings, and the remainder, if any, he shall pay over to the city treasurer, to be held by him subject to the order of said owner, but if said owner has not been actually summoned, no sale of such animal shall be made until notice of such sale has been published in some newspaper, published in Paducah, at least three days before such sale, describing the animal to be sold.

"Sec. 3. If the owner of any such animal taken up as provided for in the two preceding sections, shall appear before the court at any time before the sale as provided for in the last section and pay all costs and charges for the taking up, impounding and keeping of such animal, and all the cost, the court shall order the restoration of such animal to the owner.

"Sec. 4. The officer taking up any animal under the preceding sections, shall be allowed his fees and costs, to be paid and collected only out of the proceeds of such animal, or out of the fines and costs assessed against such owner, and there shall be taxed as costs in each case the following fees: To the officer taking up such animal, 50 cents for each animal, and 50 cents per ———— each day for the keeping of each animal while impounded.

"Sec. 5. Whoever shall unlawfully molest or prevent any officer from taking up and impounding any such animal, or shall open the enclosure in which such animal is impounded for the purpose of releasing

such animal, shall be fined not less than $5 nor more than $20 for each offense.

"Sec. 6. So much of any ordinance now existing in conflict with this ordinance is hereby repealed.

"Sec. 7. This ordinance shall be in force from its passage and approval and publication.

"Adopted May 4, 1905, by the board of aldermen.

Adopted May 16, 1905, by the board of councilmen.

"Approved by the mayor of Paducah June 5, 1905."

As the judge of the police court stated his reasons at some length in his judgment, we will discuss and dispose of them in the order presented.

1. It was held that the ordinance was probably defective because it took effect immediately, and gave the owners of cattle in the city no notice by which they could regulate themselves and their property according to the new conditions. The statutes provide that ordinances shall be passed only under certain formalities, as to publication and the like. It was intended by these provisions that citizens and all others concerned should, at their peril, keep posted concerning enactments of ordinances affecting the city's welfare and government. But in the absence of such statutory regulation, admitting that the ordinance was within the power granted to the municipality, there is no constitutional provision requiring previous notice of the enactment of an ordinance before it shall become effective. All ordinances, when regularly adopted, are necessarily matters of public record, of which everybody who may be concerned by them must taken notice. The only restriction on this point in the Constitution is that no ex post facto law shall ever be adopted. This

ordinance is in no sense subject to that vice. It operated alone on future acts.

2. It was thought the ordinance embraced more than one subject. The subject of this ordinance is the prevention of certain cattle from running at large in the city. Various features of the subject are treated by different sections of the ordinance. All are germane to the subject named. A full discussion of this question may be found in the court's recent opinion in City of Louisville v. Wehmhoff, etc., 116 Ky., 812; 25 Ky. Law Rep., 995; 176 S. W., 876; 79 S. W., 201.

3. The police court held that the effect of the ordinance was to require the owner to appear in court and prove his innocence or suffer a fine. This clause of section 2 of the ordinance is claimed to have that effect: "If said statement shall disclose the name of the owner of such animal, the judge of said court shall issue a summons against said owner commanding him to appear in said court and show cause, if any he can, why he shall not be fined $5 for violation of the preceding section, and why such animal shall not be sold," etc. This clause does not, as was supposed, presuppose the guilt of the owner of the stray animal. It merely provides for his being summoned that the question of his guilt may be tried. When summoned, his plea of not guilty, as in any other misdemeanor or charge of violating an ordinance of the city, puts the burden upon the prosecution to prove his guilt beyond a reasonable doubt. If the animal was found at large upon the streets of the city under such circumstances as the ordinance penalizes, it would make a prima face case of guilt against the owner. So does the possession of a United States revenue

license to retail iquor in a local option district consti-
tute prima facie evidence of guilt against the person
to whom issued.   Section 2557b, subsection 2, Ky.
Stat., 1903.   Yet it has not been thought that the
statute was invalid.   It has been held to the contrary.
Hestand v. Commonwealth, 28 Ky. Law Rep., 1315
(decided March 20, 1906) ; 92 S. W., 12.

4. The main attack upon the ordinance, however,
is upon its constitutionality; it being asserted that
it deprives the owner of his property without due
process of law, and thereby violates both the State
and Federal Constitutions.   The subject is not at all
new.   The impounding of stray cattle which wandered
upon another's land damage feasant was early
practiced at the common law, and has ever since in
some form been continued wherever the common law
prevails.   As close akin to it in principle is the right
of the public to be protected from damage by estrays.
This right is exercised under the police power
inherent in government, whether State or municipal.
The running at large of stray cattle in a populous
community is treated generally as a kind of public
nuisance—one that endangers the safety and the
property of the citizens.   It is therefore competent to
regulate the matter by punishing the owners, as well
as by proceeding as in rem against the property itself.
Cooley's Const. Limitations, 247, 741.   In some enact-
ments of by-laws of this character forfeiture of the
stock without office found was provided.   In this
country these provisions are held generally to be void,
as "contrary to the genius of our laws and constitu-
tions."   Cotter v. Doty, 5 Ohio, 394.   Such forfeiture
is not always void, however.   It is only where the
forfeiture is exacted without trial or a day in court

of the owner of the property. But, where the legislature expressly grants the power to forfeit the property, after the owner upon trial has been found guilty, the forfeiture will be enforced. Dillon's Mun. Corp., section 150; Smith's Modern Law of Municipal Corporations, section 612. The owner of private property, it is true, is protected in his ownership and use, but he must so use and control it as not to injure his neighbor or the public. While the former has only his private action for damages, the latter may take more summary action, and, as its sovereign will may declare by penal statute, may deprive such careless owner of the means of inflicting perpetual injury upon the community by the negligent use of his property. Such is the power of the public to abate nuisances, even in certain instances to the destruction of property.

In this State the subject has not gone unattended. In the early part of last century there were statutes authorizing patrols of certains towns to take up and confine negro slaves found running at large under certain named conditions. No provision was made for the trial of the owner for suffering the slave to be at large. In Jarman v. Patterson, 7 T. B. Mon., 644, slaves were declared to be "under the law on the same footing with living property of the brute creation." It was held that such an imprisonment, likened by the opinion, as it was in fact, to an impounding of animals found at large, was a legitimate exercise of the police power by the State's authority, and was not an infringement of the constitutional right of the owner to have the liability of the slave to imprisonment tried in court. The rigor of that opinion has not been since maintained. In

McKee v. McKee, 8 B. Mon., 433, the question was the right of the town of Lancaster to impound hogs found at large upon its streets, and to sell them. The court observed: "The running at large of hogs in a town may be regarded as a public nuisance, which this ordinance is designed to prevent and abate. We perceive nothing in the mode of proceeding unconstitutional or inappropriate nor is the penalty imposed deemed excessive or unreasonable." While the court treated the proceeding as one in rem, it was said that "due notice was served upon the owner of the hogs, and he was made a party to the proceeding."

In Varden v. Mount, 78 Ky., 86; 39 Am. Rep., 208, where the ordinance of the town of La Grange imposed a fine on the owner who suffered his hogs to run at large on the streets of the town, as well as made it the duty of the town marshal to sell the hogs after three days' notice, it was held that the forfeiture of the property without a trial was unconstitutional. The ordinance was held to be valid otherwise. Section 3058, Ky. Stat., 1903, defining the powers of cities of the second class as to what ordinances they may enact, empowers them, by subsection 12, "to regulate or prohibit the running at large of cattle, cows, hogs, goats, and all other animals within the limits of the city, and to authorize the impounding of same." While a somwhat similar grant of power was held in McKee v. McKee, supra, to confer by implication the right to forfeit the stray hogs, this ordinance does not provide for a forfeiture. It merely makes the live stock liable for the fine and costs of the proceeding, after a trial in a judicial tribunal, which is a purely penal proceeding. Section 348, Dillon Munic. Corp. As the owner of the property is given a day in court,

vol. 122—28.

and as the property can in no event be sold without a judicial trial of its liability, it is not a taking of property without due process of law to take up the cattle found astray in the city, and to sell them under the proceedings authorized by this ordinance.

5. The ordinance was thought to be invalid for the further reason that it did not provide an appeal to the property owner. Then every ordinance, from a conviction of which an appeal was not provided, would likewise be invalid; but this is not so. Many penal actions have no appeal provided. It is solely within the legislative discretion whether an appeal in any case shall be granted. In the first half century of the Commonwealth there were no appeals allowed in any criminal case, though capital. Besides, the city could not regulate the matter of appeals by ordinance. This is for the legislature alone to do.

Lastly, it was held that chapter 122, Ky. Stat., 1903, which allows rural communities to adopt a "stock law" by vote, by which the running of stock at large might be prohibited, applied to cities also. The statute does not profess to alter or amend the various city charters, which had expressly given to the several cities the right to legislate through their councils on this subject. All this legislation should be considered together as a whole, rather than fragmentarily and as antagonistic, as repeals by implication are disfavored. We are of the opinion that the ordinance is a valid exercise of police power by the city under the express grant to it by the legislature.

The judgment of the police court dismissing the warrant is reversed, and cause remanded for proceedings not inconsistent herewith.