# STATE v. LEO KETTERER.

79 N. W. (2d) 136.

October 26, 1956—No. 36,932.

*John C. Haave,* City Attorney, and *R. M. Saltness,* for plaintiff.
*Johanson, Winter & Lundquist* and *Gunder Gunhus,* for defendant.

MATSON, JUSTICE.

This case comes up for review upon the certification by the district court, pursuant to M. S. A. 632.10, that an important and doubtful question of law has arisen in connection with the trial and conviction of the defendant.

We have this question: Does a defendant who has appealed to the district court from a conviction by a municipal court for a violation of a city ordinance, *upon and by virtue of such appeal,* have either a constitutional or a statutory right to a jury trial in the district court? A subordinate question arises as to the right of the defendant to an advisory jury pursuant to Rule 39.02 of the Rules of Civil Procedure.

Defendant was tried and convicted without a jury in the municipal court of Montevideo for the violation of two city ordinances, first, for permitting an unmarried person under the age of 18 to remain in a public dancehall of which he was the manager and proprietor contrary to the provisions of the Ordinances of the City of Montevideo, c. 73, and, secondly, for permitting the drinking of intoxicating liquor in his place of business in violation of c. 153 of the ordinances of said city.

Pursuant to § 488.25 the defendant appealed the convictions to the district court where by stipulation the actions were consolidated for trial. Initially the actions were placed on the jury calendar, but

thereafter a motion by the state for trial to the court without a jury was granted. A subsequent motion by the defendant for a jury trial was denied. The defendant then moved to try the actions to the court with an advisory jury pursuant to Rule 39.02. This latter motion was likewise denied by the trial judge. When the cases were called for trial the defendant again renewed his motion for a jury trial. Upon the denial of this latter motion, counsel for the state and the defendant stipulated that the question of law raised should be submitted to the supreme court as a doubtful question of importance. The trial court granted the request for certification and the matter is now before us for review.

 Basic to a consideration of defendant's contention that, under Minn. Const. art. 1, §§ 6 and 7, he is entitled to a jury trial is a determination not only of the true nature of municipal ordinance violations and of the proceedings for their prosecution but also of the preconstitution status of such violations. Many courts have applied to these violations a confusing variety of terms by stressing either the civil or the criminal aspects according to which aspect lent itself most conveniently to the reaching of a desired conclusion.[1] Most courts, mindful of practices at common law prior to the adoption of their state constitution, hold prosecutions under the ordinances to be civil proceedings.[2] This court, with a happy indifference to consistency, has referred to offenses against municipal ordinances and to proceedings for prosecution of the offenders as noncriminal,[3] quasi-criminal,[4] petty,[5] and criminal.[6]

---

[1]See, Grant, *Penal Ordinances in California*, 24 Calif. L. Rev. 123, 124; 13 U. of Kansas City L. Rev. 160; 36 Minn. L. Rev. 143, 145, note 10.

[2]9 McQuillin, Municipal Corporations (3 ed.) § 27.06.

[3]City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305.

[4]State v. Lee, 29 Minn. 445, 452, 13 N. W. 913, 914; State v. Robitshek, 60 Minn. 123, 125, 61 N. W. 1023, 1024, 33 L. R. A. 33; City of St. Paul v. Keeley, 194 Minn. 386, 260 N. W. 357.

[5]See, State ex rel. Connolly v. Parks, 199 Minn. 622, 625, 273 N. W. 233, 234.

[6]State ex rel. Erickson v. West, 42 Minn. 147, 43 N. W. 845; City of St. Paul v. Stamm, 106 Minn. 81, 118 N. W. 154; State ex rel. Salter v.

Our confusing nomenclature no doubt stems in part from a failure to keep in mind the scope of the common-law right to jury trial when our state constitution was adopted and further, because of this failure, from an attempt to reconcile the status of ordinance violations at common law with the literal wording of our state constitution. The rapid growth in our urban population from less than 10 percent in 1860 to over 50 percent in 1950[7] has increased the need for the regulation of crime, and this need has received little consideration on the state level but has been dealt with largely through an expansion of local regulation in the form of municipal ordinances.[8] The ever-increasing impact upon the citizens of prosecutions imposing a prison or financial penalty for the violation of ordinances demands a reappraisal of their intrinsic nature and place in our scheme of law enforcement. As realistically pointed out by Mr. Justice Mitchell in State ex rel. Erickson v. West, 42 Minn. 147, 151, 43 N. W. 845, 847 (wherein the earlier decision of City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305, was qualified and distinguished), offenses involving the violation of municipal ordinances to which a penalty, such as fine or imprisonment, is attached as a punishment are "criminal" offenses within the literal meaning of that term as used in the constitutional provision which guarantees to the accused in all criminal prosecutions the right to a speedy trial by an impartial jury. Minn. Const. art. 1, § 6. In speaking of these violations, Mr. Justice Mitchell said (42 Minn. 151, 43 N. W. 847):

"* * * They come strictly within the definition of 'crimes or criminal offences.' The terms 'crime,' 'offence,' and 'criminal offence' are all synonymous, and ordinarily used interchangeably, and include any breach of law established for the protection of the public, as distinguished from an infringement of mere private rights, for which a penalty is imposed or punishment inflicted in any judicial proceeding. * * * *A municipal ordinance is as much a law for the*

McDonald, 121 Minn. 207, 141 N. W. 110; Village of Crosby v. Stemich, 160 Minn. 261, 199 N. W. 918.

[7] 1 Census of Population 1950, p. 23-9.

[8] 36 Minn. L. Rev. 143, 144.

*protection of the public as is a criminal statute of the state,* the only difference being that the one is designed for the protection of the municipality and the other for the protection of the *whole* state, and in both cases alike the punishment is imposed for the violation of a public law. If the state itself, directly, should make the act an offence, and prescribe the punishment, there could be no question but that the act would be a 'crime' and the prosecution of it a 'criminal prosecution,' within the meaning of the constitution; and how can it make any difference, *either in the intrinsic nature of the thing or in the consequences to the accused,* whether the state does this itself, or delegates the power to pass the law to the municipal authorities?" (Italics supplied.)

Although prosecutions for violations of municipal ordinances are intrinsically criminal in nature, within the literal meaning of the term "criminal prosecutions" as used in Minn. Const. art. 1, § 6, it does not follow that the constitutional guarantee applies to them. They fall outside the constitution, not because they are noncriminal, but purely for historical reasons. It is elementary that the constitution preserves the right to jury trial only to the extent that such right existed by the laws of our territory when the constitution was adopted, and such right was thereby neither extended nor limited.[9]

Prior to the adoption of the constitution, the right of jury trial existed under territorial law only with respect to those criminal prosecutions relating to acts which by statute had been made offenses against the peace and dignity of the state *as a whole* and not to those offenses involving nothing more than a violation of municipal police regulations or ordinances.[10] These so-called petty offenses had always theretofore been punishable by magisterial officers, in a summary way, without a jury, both in England and in the Colonies.[11] In fact, prior to the adoption of the constitution, despite

[9]City of Mankato v. Arnold, 36 Minn. 62, 30 N. W. 305; State ex rel. Erickson v. West, 42 Minn. 147, 43 N. W. 845; 36 Minn. L. Rev. 143, 153; see, 9 McQuillin, Municipal Corporations (3 ed.) § 27.34.

[10]State ex rel. Erickson v. West, 42 Minn. 147, 43 N. W. 845.

[11]See, 9 McQuillin, Municipal Corporations (3 ed.) § 27.34.

the intrinsically criminal character of certain ordinance violations, proceedings for their enforcement were treated as civil actions; the majority of states have regarded them as civil actions for the recovery of a debt.[12] Clearly, ordinance violations at common law, and prior to the adoption of our Federal and state constitutions, were placed in an entirely different category from violations enacted for the protection of the realm as a whole. Instead of trying to distinguish such ordinances on the basis that they are civil, non-criminal, or quasi-criminal, it should be frankly recognized that they are criminal enactments which are historically sui generis.

Our decisions likewise demonstrate that prosecution proceedings under these punitive ordinances are sui generis. On no other basis can we explain the curious conclusions reached in the various cases. We have held that a conviction for a violation of an ordinance does not bar a prosecution for the same act under a state statute[13] although the municipality is but an agent through which the state acts. However, an appeal by a municipality from an acquittal for an ordinance violation is barred on the ground that the accused may not be placed twice in jeopardy for the same offense.[14] Further, unlike an offense under a state statute, proof of guilt for violating an ordinance need not be beyond reasonable doubt.[15] In many other respects our opinions illustrate that prosecutions for ordinance violations fall outside the accepted and normal patterns governing criminal prosecutions under state statutes.[16] Other jurisdictions have recognized the abnormality of these prosecutions by characterizing them as hybrid actions, partly criminal and partly civil.[17]

[12] 9 McQuillin, Municipal Corporations (3 ed.) § 27.06.

[13] State v. Lee, 29 Minn. 445, 13 N. W. 913; State ex rel. Connolly v. Parks, 199 Minn. 622, 273 N. W. 233.

[14] City of St. Paul v. Stamm, 106 Minn. 81, 118 N. W. 154.

[15] City of St. Paul v. Keeley, 194 Minn. 386, 260 N. W. 357; State v. Nelson, 157 Minn. 506, 196 N. W. 279.

[16] For an excellent note discussing offenses against municipal ordinances, see 36 Minn. L. Rev. 143 to 154.

[17] 1 Am. Jur., Actions, § 42.

■ Since prosecutions for punitive ordinance violations, though criminal in nature, are sui generis, it is illogical to challenge their validity merely because they do not fall into the accepted patterns of either civil or criminal actions. In considering the issues herein, we start with the long-established rule of our decisions that the accused has no constitutional right to a jury trial when tried for an ordinance violation in a municipal court. Does a defendant, however, who has appealed to the district court from a conviction of a municipal court upon and by virtue of such appeal, acquire a right to a jury trial in the district court? In answering this question it is well to bear in mind that the term "offense" has reference not only to the act of the accused but also to the regulation or law which such act violates. In other words, the identity of an offense is to be determined by both the act and the law which it contravenes.[18] Clearly, an appeal to the district court in no manner changes either the act or the law which it violates. We still have the same offense. Since the offense, though criminal in nature, falls outside the constitutional guarantee of a jury trial and involves the same act and the same law whether tried in a municipal court or before a district court, it would be absurd to assume that a constitutional right to a jury trial arises merely by virtue of an appeal.

In view of the fact that the defendant has no *constitutional* right to a jury trial upon appeal, that right, if it exists at all, must be found in our statutes. Whether an alleged violator of a city ordinance is to enjoy the right to a jury trial, *at any court level,* is a matter solely within the discretion of the legislature. On the municipal court level the legislature has chosen expressly to deny it. Section 488.09 provides that:

"* * * and all cases arising under the charter, ordinances, or by-laws of such city or village shall be tried by the court without a jury."

---

[18]See concurring opinion in State v. Oleson, 26 Minn. 507, 517, 5 N. W. 959, 969.

The foregoing needs no interpretation; it is clear. Defendant asserts, however, that an appeal gives him the right to a jury trial because of the wording of two other statutes, namely, §§ 488.25 and 633.22.' Section 488.25 provides:

"Appeals may be taken to the district court of the county from the judgments of municipal courts in the same cases, *upon the same procedure, and with the same effect as provided by law respecting appeals from justices' courts,* and all laws relating to such last named appeals shall be adapted and applied to appeals from the municipal courts." (Italics supplied.)

Section 488.25 must be construed in conjunction with § 633.22, which governs appeals from the justice courts and which reads as follows:

"Upon an appeal on questions of law alone, the cause shall be tried in the district court upon the return of the justice. *Upon an appeal on questions of law and fact, the cause shall be tried in the same manner as if commenced in the district court."* (Italics supplied.)

Defendant can take no comfort from either §§ 488.25 or 633.22 or from both of them when construed together. Obviously these statutes are purely procedural and do not purport to give litigants any rights which they do not otherwise possess. The first sentence of § 633.22 provides that on appeal on questions of law alone the matter shall be determined upon the return of the justice of the peace. The second sentence takes color from the first sentence and clearly means no more than that, if an appeal involves both questions of law and fact, the district court must try the case de novo.

In construing legislative enactments we should not overlook two basic facts, namely, that the same offense is involved whether the matter is tried by the municipal court or by the district court, and, secondly, that the policy of the law since time immemorial, as revealed by our own decisions, has been to place prosecution of ordinance violations in a distinct class by themselves to the end that the trial of the offenders against municipal bylaws shall be speedy and the punishment promptly imposed in a summary manner without resort to jury trial (see, City of Mankato v. Arnold, 36 Minn. 62,

30 N. W. 305) unless the legislature sees fit to grant to a defendant the right to a jury trial as is done if the case is tried by a justice of the peace. Our legislature recognized the common-law summary procedure by expressly giving it recognition through the enactment of § 488.09. State v. Olson, 115 Minn. 153, 131 N. W. 1084. In the absence of clear statutory language we should not attribute to the legislature an intent to authorize the abandonment of the summary procedure the moment an appeal is taken. If we were to do so we would reach the absurd conclusion that the legislature intentionally enacted two separate statutory provisions, both dealing with the same offense, which work at cross-purposes with each other. We conclude therefore that §§ 488.25 and 633.22 do not afford the accused a right to jury trial upon appeal from a conviction by the municipal court for an ordinance violation.

■ Since prosecutions for the violation of punitive ordinances are essentially criminal in nature, there is no merit in defendant's assertion that, upon appeal to the district court, he was entitled to an advisory jury under Rule 39.02 of the Rules of Civil Procedure.

In determining defendant's contentions adversely to him we are not unmindful, in the light of modern conditions, of the need for a reappraisal of the status of prosecutions for violation of municipal ordinances to determine whether a jury trial ought not to be made available in certain instances. If, however, any changes are to be made in our long-established practice governing ordinance violations, the right to make those changes belongs to the legislature and not to the court.[19]

The question certified to this court, in accordance with this opinion, is answered in the negative.

[19]We have not overlooked decisions of other jurisdictions cited by counsel. We consider them inapplicable to the statutory provisions of this jurisdiction.