# CITY OF ST. PAUL v. FOREST WHIDBY.

203 N. W. 2d 823.

December 29, 1972—No. 43024.

*Paul H. Ray,* for appellant.

*Daniel A. Klas,* Corporation Counsel, and *Pierre N. Regnier,* Assistant Corporation Counsel, for respondent.

*C. Paul Jones,* State Public Defender, amicus curiae.

*Michael F. Fetsch,* for Legal Assistance of Ramsey County, Inc., amicus curiae.

*R. Michael Wetherbee,* for Minnesota Civil Liberties Union, amicus curiae.

*Phyllis Gene Jones,* General Counsel, and *Esther M. Tomljano-vich,* Legal Consultant, for Minnesota Urban County Attorneys Board, amicus curiae.

Heard before Murphy, Peterson, Kelly, and Nelson, JJ. Reconsidered on the record en banc.

KELLY, JUSTICE.

Defendant appeals from a conviction for violating St. Paul City Legislative Code, § 469.01, which prohibits the visiting of a disorderly house. He contends that the district court erred in (1) refusing to instruct the jury that defendant is presumed innocent and must be proved guilty beyond a reasonable doubt; (2) in instructing the jury that after 6 hours of deliberation it would be permitted to return a verdict upon an agreement by five-sixths of its number; (3) by permitting a police officer who had secured a search warrant to testify as to what he saw when he entered the premises in which defendant was arrested; and (4) in denying defendant's motion to dismiss the case on the grounds that the ordinance was unconstitutionally vague and overbroad. We agree with defendant as to issue (1) and reverse as to it. While we find no reversible error in this case as to issue (2), because the jury's verdict was unanimous and defendant did not have the jury polled, we direct that the five-sixths verdict instruction not be given on the new trial. On issues (3) and (4) we find no error in the trial court's ruling.

Several plainclothesmen from the vice squad of the city of St. Paul visited the residence at 144 Mackubin Street shortly after 1 a. m. on December 2, 1970. There they observed what appeared to be an "after-hours" bar. One of the officers ordered a drink from the bartender and gave the bartender a $10 bill. The bartender gave the bill to defendant who was sitting near the bar, and defendant produced change for the bill. Shortly thereafter, police with a search warrant arrived at the residence.

Defendant was charged with the ordinance violation and pled guilty in municipal court. He was sentenced to 30 days in the workhouse. Thereupon, defendant appealed to the district court for a trial by jury. Minn. St. 488A.27, subd. 6. After the jury had been selected, the following conversation took place among the court and the two attorneys:

"MR. MCLAUGHLIN: Is there any objection to mentioning in the opening statement, under the rules of civil procedure the defendant is not entitled to the presumption of innocence?

"THE COURT: I suppose you can. That has been brought up quite frequently during your voir dire examination. Again, I will so instruct, he is not clothed with that presumption. We start off even.

"MR. RAY: The defendant will take exception to that law, that the defendant is not clothed with innocence—is not presumed to be innocent—and that this right is given by the Constitution, even though this is an ordinance violation, it's still criminal in nature in that the defendant may suffer imprisonment.

"THE COURT: I'm inclined to believe that you would have a lot of support for the position you take. I'm satisfied that someday we may have a different result here in these constitutional rights. You may see the retaining of the rule that proof may not be—reasonable doubt may not be necessary—only preponderance of the evidence, but I think we've got a lot going on it for you on this presumption of [innocence]. It's still a crime. It's still a matter that can be very serious—90 days in prison. I'm not sure that that will always be our law. But based on what we have here today, we will tell them we don't have the presumption, so when they come into court, they are still even, but the burden is still on the City to prove by a preponderance that he committed the act as charged."

After the evidence was in, the trial court instructed the jury as follows:

"* * * Whenever I say a claim must be proved, I mean that all of the evidence, by whomever produced, must lead you to believe it is more likely that the claim is true than not true. So if the evidence does not lead you to believe it is more likely that the claim is true than not true, then that claim has not been proved. Conversely, or the other way around, if the evidence does lead you to believe it is more likely that the claim is true than not

true, then that claim has been proved. Proof of a claim does not depend upon the volume of testimony offered or the number of witnesses called, because any believable evidence may be a sufficient basis to prove a claim. What the law requires is that the person with the burden of proof, or the side—in this instance, the City—in proving the claim, must produce evidence which will outweigh—which will preponderate—to a fair degree as compared to the evidence on the other side, or in opposition thereto. It must tip the scales, so to speak, in favor of the person making the claim in order that the burden has been sustained. What it boils down to is the convincing effect of the evidence upon your minds as triers of the facts."

The jury found defendant guilty, and he was sentenced to 30 days. The maximum sentence for the offense is a fine of $100 or imprisonment for 90 days.

The trial court instructed the jury on the burden of proof appropriate for a civil case. Minn. St. 611.02 provides in part as follows:

"Every defendant in a criminal action is presumed innocent until the contrary is proved and, in case of a reasonable doubt, is entitled to acquittal."

The basic question before us is whether a judicial proceeding which may result in the accused's incarceration for 90 days is civil or whether it is criminal. A long line of Minnesota decisions has held that a case involving the violation of a municipal ordinance is governed by civil procedure although such ordinances are criminal enactments which are historically sui generis. The defendant is not presumed innocent and may be found guilty by a mere preponderance of the evidence.[1] The policy considera-

---

[1] City of St. Paul v. Azzone, 287 Minn. 136, 177 N. W. 2d 559 (1970); City of Bloomington v. Kossow, 269 Minn. 467, 131 N. W. 2d 206 (1964); State v. Miller, 253 Minn. 112, 91 N. W. 2d 138 (1958); State v. Ketterer, 248 Minn. 173, 79 N. W. 2d 136 (1956); State v. Nelson, 157 Minn. 506, 196 N. W. 279 (1923); State v. Lee, 29 Minn. 445, 13 N. W. 913 (1882). Periodi-

tions of the rule are explained best in State v. Ketterer, 248 Minn. 173, 177, 79 N. W. 2d 136, 139 (1956):

"Although prosecutions for violations of municipal ordinances are intrinsically criminal in nature, within the literal meaning of the term 'criminal prosecutions' as used in Minn. Const. art. 1, § 6, it does not follow that the constitutional guarantee applies to them. They fall outside the constitution, not because they are noncriminal, but purely for historical reasons. It is elementary that the constitution preserves the right to jury trial only to the extent that such right existed by the laws of our territory when the constitution was adopted, and such right was thereby neither extended nor limited.

"Prior to the adoption of the constitution, the right of jury trial existed under territorial law only with respect to those criminal prosecutions relating to acts which by statute had been made offenses against the peace and dignity of the state *as a whole* and not to those offenses involving nothing more than a violation of municipal police regulations or ordinances. These so-called petty offenses had always theretofore been punishable by magisterial officers, in a summary way, without a jury, both in England and in the Colonies. In fact, prior to the adoption of the constitution, despite the intrinsically criminal character of certain ordinance violations, proceedings for their enforcement were treated as civil actions; the majority of states have regarded them as civil actions for the recovery of a debt. Clearly, ordinance violations at common law, and prior to the adoption of our Federal and state constitutions, were placed in an entirely different category from violations enacted for the protection of the realm as a whole. Instead of trying to distinguish such ordi-

---

cally, this court has termed municipal violations as "crimes" synonymous with violations of state statutes. Village of Crosby v. Stemich, 160 Minn. 261, 199 N. W. 918 (1924); City of Madison v. Martin, 109 Minn. 292, 123 N. W. 809 (1909); State ex rel. Erickson v. West, 42 Minn. 147, 43 N. W. 845 (1889). Such inconsistencies were recognized and the present rule firmly established by State v. Ketterer, *supra*.

nances on the basis that they are civil, non-criminal, or quasi-criminal, it should be frankly recognized that they are criminal enactments which are historically sui generis.

"Our decisions likewise demonstrate that prosecution proceedings under these punitive ordinances are sui generis. On no other basis can we explain the curious conclusions reached in the various cases. We have held that a conviction for a violation of an ordinance does not bar a prosecution for the same act under a state statute although the municipality is but an agent through which the state acts. However, an appeal by a municipality from an acquittal for an ordinance violation is barred on the ground that the accused may not be placed twice in jeopardy for the same offense. Further, unlike an offense under a state statute, proof of guilt for violating an ordinance need not be beyond reasonable doubt. In many other respects our opinions illustrate that prosecutions for ordinance violations fall outside the accepted and normal patterns governing criminal prosecutions under state statutes. Other jurisdictions have recognized the abnormality of these prosecutions by characterizing them as hybrid actions, partly criminal and partly civil."

A leading authority on the subject of municipal corporations, Eugene McQuillin, has traced the historical basis for the rule which treats municipal ordinance violations differently than crimes:

"In England, notwithstanding the provision of Magna Charta that no freeman shall be taken, imprisoned or condemned but by lawful judgment of his peers or by the law of the land, it has been the constant course of legislation for centuries past, to confer summary jurisdiction upon local magistrates and justices of the peace for the trial and conviction of parties for minor police offenses, such as petty assaults and batteries, roguery and vagabondism, public drunkenness, family abandonment, etc. Workhouses and houses of correction, principally occupied by those so convicted, have been maintained, certainly from the days of Queen Elizabeth to the present time, as a part of the police

system. Both the jurisdiction and the means of punishment have been deemed essential to the good government and well-being of society. In this country there has been no time since the earliest days of the colonies that like summary jurisdiction has not been exercised, sometimes under British statutes, but more generally by virtue of laws passed by the colonial and state legislatures. The justice of the peace has always been regarded as an important functionary, and a large portion of the police power of the state has been enforced through his instrumentality.

"It is thus apparent that infractions of such local police regulations have ever been looked upon as trivial offenses, not in their essence crimes or misdemeanors, as those terms are employed in our criminal jurisprudence. In all such cases, therefore, it is entirely competent, unless the constitution forbids, to provide for summary trial without a jury, either in the municipal charter or by act of the legislature of the state. The necessity of summary trial of such offenses is obvious. To insure the prompt and efficient exercise of the police authority, with which municipal corporations are ordinarily clothed, the trial of offenders must be speedy and the punishment summary, which are impossible of attainment under the slow and formal methods of prosecuting by indictment or information and trial by jury. In the large cities, especially because of the vast number of such hearings daily, jury trial would be impracticable. Consequently, the procedure is of necessity almost altogether summary and is not strictly regulated.

\* \* \* \* \*

"It is only where the peace, Crown and dignity of the Sovereign is affected, as distinct from his pocket, that an act can, in English law, be described as criminal, and the procedure in such case is to vindicate and punish by retributive justice." 9 McQuillin, Municipal Corporations (3 ed. Rev.) §§ 27.32, 27.37 at 698.

Whatever may have been the practice in Elizabethan England, modern conceptions of justice will not permit a person to be in-

carcerated in a city workhouse for 90 days without having first been proved guilty beyond a reasonable doubt. To characterize such proceedings as civil or sui generis is nothing more than a historical fiction. Any citizen imprisoned for violation of a city ordinance would be incredulous if informed that he was not experiencing a criminal sanction.

The city of St. Paul argues that ordinance violations are not crimes because they are not proscribed by the state of Minnesota. Municipal corporations are created by state law. See, e. g., Minn. St. 410.04. Their legislative authority is conferred upon them by the constitution and the laws of the state, and, "as to matters of municipal concern they have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld." Park v. City of Duluth, 134 Minn. 296, 298, 159 N. W. 627, 628 (1916).[2] The fact that certain acts are proscribed by ordinances enacted by a municipal corporation in its legislative capacity rather than by state criminal statutes makes them no less criminal in nature.

The judicial power to try defendant for an ordinance violation springs from the same organic law which created the courts of general jurisdiction. Minn. Const. art. 6, § 1. Mr. Chief Justice Burger, speaking for the United States Supreme Court in Waller v. Florida, 397 U. S. 387, 90 S. Ct. 1184, 25 L. ed. 2d 435 (1970), described the relationship between the state and the city as analogous to that existing between the Federal government and a Federal territory. In Waller, the unanimous court held that prosecution of an ordinance violation bars prosecution under a state statute for the same act.

Considerations such as the reduction of congested court calendars do not support the fiction that ordinance violations are merely civil matters. At least 33 states require proof beyond a

---

[2] The interest of a municipal corporation in suppressing the operation of disorderly houses, and its power to suppress them, rather than being withheld by the state, has been expressly recognized by statute. See, Minn. St. 411.40(40).

reasonable doubt to convict a defendant of an ordinance viola-
tion.[3] Other than Minnesota, only seven states, Illinois,[4] In-
diana,[5] Louisiana,[6] Massachusetts,[7] Nebraska,[8] South Dakota,[9]
and Tennessee,[10] characterize such violations as purely civil.

[3] Shuttlesworth v. City of Birmingham, 43 Ala. App. 68, 180 So. 2d 114
(1965); Qualls v. City of Anchorage, 378 P. 2d 405 (Alaska 1963); Ark.
Stat. Ann. § 44-102 (1947); Matter of Application of Clark, 24 Cal. App.
389, 141 P. 831 (1914); Douglas v. Municipal Court, 151 Colo. 358, 377
P. 2d 738 (1963); Hanjaras v. City of Atlanta, 6 Ga. App. 575, 65 S. E. 356
(1909); City of Des Moines v. Rosenberg, 243 Iowa 262, 51 N. W. 2d 450
(1952); City of Paducah v. Ragsdale, 122 Ky. 425, 92 S. W. 13 (1906); State
v. Goldberg, 131 Maine 1, 158 A. 364 (1932); White v. City of Philadel-
phia, 197 Miss. 166, 19 So. 2d 493 (1944); Kansas City v. Howe, 416 S. W.
2d 683 (Mo. App. 1967); Jersey City Land and Improvement Co. v.
Mayor and Aldermen of Jersey City, 95 N. J. L. 34, 111 A. 275 (1920);
City of Roswell v. Gallegos, 77 N. Mex. 170, 420 P. 2d 438 (1966); City of
Berea v. Petcher, 119 Ohio App. 165, 188 N. E. 2d 605 (1963); Common-
wealth v. Toth, 20 Cumb. L. J. 106 (Pa., Cumberland County, 1970); Salt
Lake City v. Robinson, 39 Utah 260, 116 P. 442 (1911); Washington & Old
Dominion R. R. v. City of Alexandria, 191 Va. 184, 60 S. E. 2d 40 (1950);
City of Seattle v. Jones, 3 Wash. App. 2d 431, 475 P. 2d 790 (1970). Cf.
Ariz. Rev. Stat. Ann. § 22-423 (1956); Md. Ann. Code art. 38, § 1 (1957);
Mich. Comp. Laws Ann. § 66.7 (1967); City of Miles City v. Drum, 60
Mont. 451, 199 P. 719 (1921); Nev. Rev. Stat. § 189.080 (1971); N. H. Rev.
Stat. Ann. § 47:21 (1970); N. C. Gen. Stat. § 14-4 (1969); City of Minot v.
Whitfield, 71 N. W. 2d 766 (N. D. 1955); Okla. Stat. Ann. tit. 21, § 3, and
tit. 22, §§ 10 and 836 (1971); Ore. Rev. Stat. § 30.315 (1971); Bautsch v.
City of Galveston, 27 Tex. Ct. App. R. 342, 11 S. W. 414 (1889); City of
Charleston v. Beller, 45 W. Va. 44, 30 S. E. 152 (1898); State ex rel. Suchta
v. District Court, 74 Wyo. 48, 283 P. 2d 1023 (1955). See, also, Mayor and
Council of Wilmington v. Durham, 51 Del. 423, 147 A. 2d 516 (1958);
People v. Scott, 26 N. Y. 2d 286, 309 N. Y. S. 2d 919, 258 N. E. 2d 206 (1970).

[4] City of Chicago v. Joyce, 38 Ill. 2d 368, 232 N. E. 2d 289 (1967).

[5] State ex rel. Town of Lowell v. Meredith, 247 Ind. 273, 215 N. E. 2d
183 (1966).

[6] City of New Orleans v. Adjmi, 249 La. 346, 186 So. 2d 616 (1966).

[7] Cf. Commonwealth v. Hayden, 354 Mass. 727, 242 N. E. 2d 431 (1968).

[8] State v. Neimer, 147 Neb. 284, 23 N. W. 2d 81 (1946).

[9] City of Redfield v. Wharton, 79 S. D. 557, 115 N. W. 2d 329 (1962).

[10] City of Sparta v. Lewis, 91 Tenn. 370, 23 S. W. 182 (1892).

There appears to be no correlation between the rule followed by a particular state and the congestion of its court calendar. The decisions and laws of other states, however, illustrate the minority position of the rule followed thus far by Minnesota.

The United States Supreme Court, as well as a majority of the states, has looked with disfavor upon the use of mere nomenclature to rationalize the application of a less rigorous standard in criminal procedure. In the case of In re Winship, 397 U. S. 358, 90 S. Ct. 1068, 25 L. ed. 2d 368 (1970), the court held that the New York juvenile procedure whereby a juvenile could be found guilty by a preponderance of the evidence violated the due process clause of the 14th Amendment. The majority, emphasizing the importance of the reasonable doubt standard, stated (397 U. S. 364, 90 S. Ct. 1073, 25 L. ed. 2d 375) :

"* * * [W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt."

The contention of the state that the proceedings are "civil" was rejected since the court had earlier ruled that certain due process standards were required in juvenile proceedings. In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. ed. 2d 527 (1966).[11]

Under Winship, defendant here would be entitled to the protection of the presumption of innocence and the requirement that his conviction be based upon proof beyond a reasonable doubt unless a distinction can be made because the charge in the present case was a misdemeanor with punishment by incarceration limited to 90 days rather than a felony with a possibility of a loss of liberty for a longer period of time. However, this court and the Supreme Court of the United States in different settings from the instant case have refused to make such a distinction.

---

[11] See, also, McKeiver v. Pennsylvania, 403 U. S. 528, 91 S. Ct. 1976, 29 L. ed. 2d 647 (1971). Cf. Murel v. Baltimore City Criminal Court, 407 U. S. 355, 358, 92 S. Ct. 2091, 2093, 32 L. ed. 2d 791, 793 (1972) (Douglas, J., dissenting).

In State v. Borst, 278 Minn. 388, 154 N. W. 2d 888 (1967), this court held that, in a trial of a charge defined as a misdemeanor where the court may impose a sentence involving incarceration in a penal institution or jail, a defendant unable to afford private counsel is entitled to have counsel appointed to represent him. The reasoning which requires the appointment of counsel for indigents in any case where the court may impose a sentence involving incarceration should also require that an accused in such cases be held entitled to the presumption of innocence and that he cannot be convicted unless he is proved guilty beyond a reasonable doubt. In Borst, this court reasoned as follows (278 Minn. 391, 396, 154 N. W. 2d 890, 893):

"At the outset, we are convinced that the right to counsel cannot logically be based on the name given to a crime. The definition of 'misdemeanor' varies from state to state and under Federal law, as does the sentence that may be imposed. Under our statute, Minn. St. 609.02, subd. 1, a crime is defined thus:

' "Crime" means conduct which is prohibited by statute and for which the actor may be sentenced to imprisonment or fine or both.'

Subd. 2 defines felony:

' "Felony" means a crime for which a sentence of imprisonment for more than one year may be imposed.'

Subd. 3 defines misdemeanor:

' "Misdemeanor" means a crime for which a sentence of not more than 90 days or a fine of not more than $100 may be imposed.'

Subd. 4 defines gross misdemeanor:

' "Gross misdemeanor" means any crime which is not a felony or misdemeanor.'

A gross misdemeanor is punishable by imprisonment for not more than a year or the payment of a fine of not more than $1,000, or both. § 609.03(2).

\* \* \* \* \*

"Finally, in State v. Paulick, 277 Minn. 140, 150, 151 N. W.

(2d) 591, 598 [1967], in dealing with the issuance of warrants for arrests, we said:

'The conclusion is inescapable that under the State and Federal Constitutions we can no longer draw a rational distinction between arrests made for misdemeanors and those made for felonies. The impact on the individual is merely a matter of degree.'

"Thus it is that, rationalize as we will, it is simply impossible to draw a distinction between the right to counsel in misdemeanor, gross misdemeanor, and felony cases merely because they are called by different names. A defendant convicted of a misdemeanor may be sentenced to 90 days in jail; conviction of a gross misdemeanor may conceivably lead to a jail sentence of less than 90 days, or only a fine; and still our statutes require that the court provide counsel for an indigent defendant charged with a gross misdemeanor and are silent as to appointing counsel for one charged with a misdemeanor. A defendant in court on a charge defined as a misdemeanor is as helpless to defend himself as he would be if he were charged with a gross misdemeanor or felony. While a misdemeanor under our laws, drawing a sentence which may not exceed 90 days in jail, might be considered a petty offense by many of the cases mentioned above, it nonetheless is a deprivation of liberty which, to an innocent person convicted because he is unable to properly defend himself, is of considerable consequence. If that be true, anyone accused of a misdemeanor who is unable to obtain facilities so that he can properly defend himself should be furnished such facilities, at least if he is apt to be deprived of his liberty.

"Until we have a definitive decision by the Supreme Court of the United States as to whether Gideon [v. Wainwright, 372 U. S. 355, 83 S. Ct. 792, 9 L. ed. 2d 799 (1963)] requires appointment of counsel for an indigent charged with a misdemeanor as defined by our laws, as a Sixth-Amendment right, we choose not to guess at what it may eventually hold by basing our decision on the Federal Constitution or even on our state constitution.

In the exercise of our supervisory power to insure the fair administration of justice, we decide that counsel should be provided in any case, whether it be a misdemeanor or not, which may lead to incarceration in a penal institution. In other words, if the court is to impose a jail sentence, counsel should be furnished. We leave for future determination the question of whether counsel must be furnished where only a fine is to be imposed.

"We are not unmindful of Minn. St. 574.35, which provides in part:

'* * * [I]n all cases of the imposition of a fine pursuant to statute, as punishment for any offense, the offender may be committed until the same is paid or he is otherwise discharged according to law.'

"If this provision of the statute is to be invoked and the defendant incarcerated for failure to pay a fine, the rule laid down in this case will apply. In any prosecution for a misdemeanor where an indigent defendant has been convicted after being denied counsel, the court shall not hereafter impose sentence of confinement in a penal institution, whether or not it is suspended or contingent on failure to pay the fine.

\* \* \* \* \*

"It is clear that there is no magic in the designation of a crime as a misdemeanor, gross misdemeanor, or felony. We must look to the consequences of conviction of crime rather than the classification. The impact on an accused who suffers loss of liberty by incarceration in a penal institution is the same no matter how the crime of which he was convicted was classified."

About four years after Borst, the United States Supreme Court held that no accused may be deprived of his liberty as a result of any criminal prosecution, whether felony or misdemeanor, in which he was denied the assistance of counsel. Argersinger v. Hamlin, 407 U. S. 25, 92 S. Ct. 2006, 32 L. ed. 2d 530 (1972). In Argersinger, the court stated (407 U. S. 37, 92 U. S. 2012, 32 L. ed. 2d 538):

"* * * We need not consider the requirements of the Sixth Amendment as regards the right to counsel where loss of liberty is not involved, however, for here petitioner was in fact sentenced to jail. And, as we said in Baldwin v. New York, 399 U. S. [66], at 73, [90 S. Ct. 1886, 1890, 26 L. ed. 2d 437, 443 (1970)], 'the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation.'

"We hold, therefore, that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

\* \* \* \* \*

"Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.

"The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy."

Mr. Justice Powell, with whom Mr. Justice Rehnquist joined in a special opinion, concurred in the result in that case, noting (407 U. S. 47, 92 S. Ct. 2018, 32 L. ed. 2d 544):

"* * * The consequences of a misdemeanor conviction, whether they be a brief period served under the sometimes deplorable conditions found in local jails or the effect of a criminal record on employability, are frequently of sufficient magnitude not to be casually dismissed by the label 'petty.' "

Waller v. Florida, *supra,* involved a defendant who was con-

victed of two ordinance violations and was subsequently tried for violating a state statute for the same acts. The Supreme Court held that double jeopardy was a bar for the state prosecution. Since cities are a creation of the state, the prosecutions are from the same sovereign. The court cited State v. End, 232 Minn. 266, 45 N. W. 2d 378 (1950), as one of the many contrary state decisions which are in error. Finally, in Mayer v. City of Chicago, 404 U. S. 189, 92 S. Ct. 410, 30 L. ed. 2d 372 (1971), a unanimous court held that an Illinois rule which prevented free transcripts for city ordinance violations and nonfelonies violated the Fourteenth Amendment. The distinction between felony and nonfelony cases was termed "unreasoned."

An even more compelling reason for requiring proof beyond a reasonable doubt to sustain a conviction for violation of an ordinance is the passage of L. 1971, c. 951, by our state legislature. This act, commonly known as the County Court Act, established the county court system in Minnesota, and in the process, revised certain rules of criminal procedure. All municipal courts are abolished, and the county courts are given jurisdiction over violations of municipal ordinances. C. 951, §§ 1, 18. Section 25, subd. 11, provides:

"In an action or proceeding charging a violation of an ordinance of any subdivision of government and the ordinance is the same or substantially the same as a state law, the defendant is presumed innocent until the contrary is proved and, in case of reasonable doubt, is entitled to acquittal."

None of the provisions of the County Court Act, however, apply to Ramsey, Hennepin or St. Louis Counties. C. 951, § 1.

The passage of the County Court Act demonstrates that the legislature believes it to be sound policy to require the criminal standard of proof in certain ordinance violation cases. The uniformity attained by making that standard universal in this state will promote more even-handed justice.

We have decided that the result reached in the present case

should be based on the exercise of our supervisory and inherent power to insure the fair administration of justice although we are mindful of the guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and similar provisions in our state constitution that property as well as life and liberty may not be taken from a person without affording him due process of law.

We therefore hold that in all proceedings for violation of a municipal ordinance which may result in the penalty of incarceration and which are commenced after the date of this decision the defendant is presumed innocent until the contrary is proved and, in case of reasonable doubt, is entitled to acquittal.[12]

As a corollary to our decision on this issue, we announce that in the trial of all such cases occurring after the issuance of this opinion, the rules of criminal procedure shall apply rather than the rules of civil procedure. It follows that on the new trial granted hereby Minn. St. 546.17, which provides for a verdict by five-sixths of a jury in civil cases, shall have no application.

We have purposely limited our decision on issues (1) and (2) to ordinance violations for which incarceration may be imposed as a penalty. We see no reason for treating petty offenses as defined in Minn. St. 609.02, subd. 4a, and in § 169.89, subd. 2, as criminal cases because they do not provide for incarceration as a penalty. However, because Minn. St. 574.35 provides that "in all cases of the imposition of a fine pursuant to statute, as punishment for any offense, the offender may be committed until the same is paid * * *," any case where that statute is applicable shall be tried as a criminal case.[13] If such a case is not tried as a criminal case, the court shall not thereafter impose a sentence of confinement under § 574.35.

---

[12] Cf. State v. Hoben, 256 Minn. 436, 98 N. W. 2d 813 (1959).

[13] We do not reach the issue of the right to a jury trial at the municipal court level where a jury trial de novo is afforded on appeal to the district court.

We affirm the trial court on the third and fourth issues and hold that, respecting the fourth issue, St. Paul Legislative Code, § 469.01 entitled "Disorderly Houses," is not unconstitutionally vague and overbroad under the facts in this case. City of St. Paul v. Franklin, 286 Minn. 194, 175 N. W. 2d 16 (1970). Here defendant could have been found by the jury to have actually participated in a place where loud noise was heard after 1 a. m., where liquor drinks were sold and drunk without a license, and where gambling was taking place. See, City of St. Paul v. Page, 285 Minn. 374, 173 N. W. 2d 460 (1969); State v. Wilson, 221 Minn. 224, 21 N. W. 2d 521 (1946); State v. Siporen, 215 Minn. 438, 10 N. W. 2d 353 (1943).

Reversed and remanded with instructions.