# CITY OF BEMIDJI v. PAUL WENGER.

## 83 N. W. (2d) 111.

### May 10, 1957—No. 37,111.

*W. E. Tarutis,* for appellant.
*Thomas M. Hilligan,* City Attorney, for respondent.

KNUTSON, JUSTICE.

This is an appeal by defendant from a judgment of conviction of the crime of driving a motor vehicle after his driver's license has been revoked by the commissioner of highways.

As a result of a number of traffic violations, defendant's driver's license was revoked by the commissioner of highways. He was issued a conditional chauffeur's license by the secretary of state which provides:

"This license does not allow the licensee to operate any vehicle except as indicated below:

"Trucks while actually engaged as a chauffeur"

On the evening of January 8, 1956, defendant was observed by the police officers of the city of Bemidji to be driving a Chevrolet panel truck. The truck was first observed by the patrolman while it was parked in front of a tavern about 10 p. m. At about 1 a. m. the following morning, the officers observed defendant driving the truck, and, after following it to the home of defendant's landlady, Rose Hilti, they arrested defendant for driving without a license.

The panel truck was owned by Rose Hilti. She was afflicted with diabetes and was subject to fainting spells and for that reason did not drive an automobile. Defendant and Rose Hilti testified that, because of her physical condition, Mrs. Hilti had hired defendant to drive the truck for her, for which he was paid $15 per month. His principal employment was by Land O' Lakes Motors as a body and fender worker. In the course of such employment he sometimes drove trucks.

At about 7 or 8 o'clock during the evening preceding his arrest, defendant had driven Mrs. Hilti's truck, with the owner as a passenger, to the home of one Elizabeth Thorson, a distant relative of Mrs. Hilti. It appears that Mrs. Hilti had purchased the carcass of a pig from a farmer and that the object of the trip to the Thorson home was to deliver the pig's head and some liver, for which Mrs. Hilti was paid the sum of $1.50. On the same evening, around 8:30 p. m., defendant also drove his landlady to the home of Mrs. Madeline Sanders, who is Mrs. Hilti's daughter. It appears that Mrs. Sanders was fond of headcheese, which apparently is made from the pig's head, so the object of this trip was to deliver some headcheese to her. Apparently the headcheese was a gift since the record fails to disclose any payment therefor. We assume that the

near relationship of Mrs. Sanders to Mrs. Hilti accounts for her generosity in that regard. It also appears that on other occasions defendant had driven Mrs. Hilti to places where she had made social calls, but in this case we are limited to a consideration of the nature of the driving done at or immediately prior to his arrest.

The principal contention of defendant is that he had a legal right to drive the panel truck as he was doing under the limited license which had been issued to him.

■. The license held by defendant is issued pursuant to M. S. A. 168.44, which, as far as material here, reads:

"When at least three months of a period for which a chauffeur's license has been revoked have elapsed, and if the chauffeur's livelihood depends upon his employment as a licensed chauffeur, the secretary of state may, upon recommendation by the court in which the chauffeur was convicted, issue a limited license to such chauffeur on condition that proof of financial responsibility covering the vehicle or vehicles to be operated shall be filed in accordance with the provisions of the financial responsibility act. The secretary of state in issuing such limited license may impose such condition and limitation as in his judgment are necessary in the interest of public safety and welfare, including re-examination as to the chauffeur's qualifications. Such license may be limited to the operation of particular vehicles, to particular classes of operation, and to particular conditions of traffic."

For the purposes of c. 168, "truck" is defined by § 168.011, subd. 10, as follows:

" 'Truck' means any motor vehicle designed and *used for carrying things other than passengers*." (Italics supplied.)

Section 168.39 provides in part:

"No person shall drive a motor vehicle as a chauffeur upon any public highway in this state unless he be licensed by the secretary of state, as provided by this chapter, * * *.

"The term 'chauffeur,' as used in section 168.39 to 168.45, means and includes:

\* \* \* \* \*

"(3) Every employee who, in the course of his employment, operates upon the streets or highways a truck, tractor, or truck-tractor, belonging to another, with the exception of those light trucks classified as pickups, panels and sedan deliveries which are only used to carry tools, repairs, light materials and equipment used by the driver in the furtherance of some other and principal occupation, \* \* \*."

The permissible limits of a license issued under § 168.44 must be determined in the light of the statutes defining the terms used therein. Section 168.39 defines "chauffeur" with respect to different types of vehicles. Paragraph (2) thereof includes "Every person who is employed for the principal purpose of operating a passenger vehicle." Paragraph (3) thereof defines chauffeur as that term is used with reference to driving a truck. Obviously, a limited chauffeur's license issued under § 168.44 granting to the holder permission to drive a truck as a chauffeur as that term is defined in § 168.39(3) does not include permission to operate the truck as a passenger vehicle as a chauffeur as that term is defined in § 168.39(2).

Construing these statutory provisions together, we think that it appears clear that the license held by defendant granted him the right only to drive as a chauffeur a vehicle defined as a truck. There appears no other limitation on the license. Apparently the dispute here centers around the proposition of when a truck is a truck under these statutory provisions. The state claims that, when the truck carries a passenger, it ceases to be a truck within the definition of § 160.011, subd. 10. Defendant claims that the presence of the owner in the truck is only incidental to the main purpose and does not alter its status as a truck. We think that neither position is entirely right. The mere presence of a passenger, whether it be the owner of the truck or not, should not be held to remove the vehicle from the status of a truck if it is used for a purpose for which a truck, as defined, customarily is used, at least in the absence of a complete restriction on carrying passengers in the license itself. On the other

hand, a truck may cease to be a truck, as so defined, if it is used as a passenger vehicle. Light panel trucks conceivably can be used as such, and a reasonable construction should be placed upon these terms so that the purpose for which the truck is actually used may be considered controlling. The purpose for which a limited chauffeur's license was issued under the above statute to defendant obviously does not encompass use of the truck as a passenger vehicle, but, on the other hand, absent a restriction against carrying any passengers, it does not seem to us reasonable to hold that the mere presence of a passenger, when the truck is otherwise used as such, should change its status from a truck to a passenger vehicle. The use to which it is put presents a question of fact to be determined in the light of the applicable statutory provisions.

Had defendant gone directly home after delivering the pig's head, the question probably would have been whether the pig's head or the passenger constituted the main cargo. In that case the return home no doubt would be a part of the trip. But aside from that, the court could find from the evidence in this case that, after delivering the pig's head to Mrs. Thorson and the headcheese to Mrs. Sanders, defendant and his passenger deviated from the use of the vehicle as a truck and used it purely as a passenger vehicle. The officers saw it parked near a tavern from 10 p. m. until 1 a. m. the next morning. The evidence fails to disclose the whereabouts of defendant or his landlady while it was so parked. Mrs. Hilti was not in the pig business, and it would seem that, taking the evidence most favorable to the court's finding, the inference is permissible that at the time of the arrest, at least, the truck was being used not for the delivery of merchandise but purely as a passenger vehicle and that such purpose was beyond the limited purpose of the license.

■ Defendant claims also that the court erred in admitting into evidence the record of prior convictions. He claims that such record is inadmissible under § 169.94, subd. 2 of which reads:

"The conviction of a person upon a charge of violating any provision of this chapter or other traffic regulation less than a felony

shall not affect or impair the credibility of such person as a witness in any civil or criminal proceeding."

As applied to criminal proceedings, this statutory provision prevents use of a conviction of traffic violations for the purpose of impairing the credibility of a witness. The statute is applicable to any witness, not only a defendant, in such criminal proceeding. It does not prevent use of such record for other relevant purposes. Here, it was incumbent upon the state to prove the revocation of defendant's driver's license. For the purpose of establishing that defendant had no license to drive, it was not error to admit the record of defendant's former convictions.

We think that the evidence reasonably sustains the conviction. Affirmed.