## STATE v. DONALD A. HARTMAN.

112 N. W. (2d) 340.

December 1, 1961—No. 38,539.

*Stanley S. Gillam,* for relator.

*Keith M. Stidd,* City Attorney, and *Stephen F. Varichak,* Assistant City Attorney, for respondent.

NELSON, JUSTICE.

This matter comes before this court upon a writ of prohibition and order to show cause. The facts, which are not in dispute, may be stated as follows:

Relator, Donald A. Hartman, was issued a traffic citation at the scene of an accident shortly after 9 p. m. on May 27, 1961, by two Minneapolis police officers. Relator was driving a light panel truck belonging to Conroy Brothers Company, his employer. When the accident occurred he was using the truck to transport the tools necessary to his occupation as a lather and to haul material for his employer to the company garage. Relator appeared alone in answer to the citation, was arraigned by the clerk of the municipal court, and entered a plea of guilty to the charge of following a vehicle too closely in violation of Minneapolis City Charter and Ordinances (Perm. ed.) 9:1-708.1. The ordinance is a counterpart of Minn. St. 169.18, subd. 8, of the Highway Traffic Regulation Act. The Honorable Tom Bergin, the presiding judge, upon being apprised of certain facts concerning the accident, ordered that relator be charged with driving after suspension of his driver's license, in violation of Minneapolis City Charter and Ordinances (Perm. ed.) 9:1-205.7. Relator entered a plea of not

guilty to this charge and trial thereon was set and relator was released on his personal recognizance. Relator later appeared with his attorney, demanding a jury trial on both charges. He was informed that a jury trial would be obtainable on the charge of following another vehicle too closely but that the charge of driving after suspension of his driver's license did not entitle him to a jury trial.

After a continuance, relator and his counsel appeared before the Honorable Lindsay G. Arthur and again requested a jury trial on the charge of driving after suspension of his driver's license. Judge Arthur denied this request but also indicated that a jury trial was available on the charge of following too closely. Both cases were set for trial but there has been no trial to date due to the issuance of the writ of prohibition out of this court.

Relator does not dispute that his regular driver's license has been suspended but he claims that he was employed and engaged in the furtherance of his master's business at the time of the accident, and that he was allowed to do so under a chauffeur's license issued to him by the secretary of state pursuant to Minn. St. 168.39.

The state concedes that under the rule of State v. Hoben, 256 Minn. 436, 98 N. W. (2d) 813, relator is entitled to a jury trial on the charge of following too closely, since that charge involves an ordinance which is a counterpart of Minn. St. 169.18, subd. 8. The state contends, however, that the charge of driving after suspension of license, which is a violation of an ordinance only, is not governed by the Hoben case and that relator therefore is not entitled to a jury trial in the municipal court on that charge.

■ Minn. St. c. 169 relates to the general subject of highway traffic regulation. Section 169.03 thereof provides that the provisions of the chapter shall be applicable and uniform throughout the state and in all political subdivisions and municipalities therein and that no local authority shall enact or enforce any rule or regulation in conflict with its provisions unless expressly authorized therein. This section further provides that local authorities may adopt traffic regulations which are not in conflict with the provisions of c. 169 but that when any local ordinance covers a subject for which a penalty is provided in c. 169

the penalty for violation of the ordinance shall be identical with the penalty prescribed in c. 169 for the offense.

Reference to State v. Ketterer, 248 Minn. 173, 79 N. W. (2d) 136, may aid materially in an approach to the issues in the instant case. That case involved the question (248 Minn. 174, 79 N. W. [2d] 137):

"Does a defendant who has appealed to the district court from a conviction by a municipal court for a violation of a city ordinance, *upon and by virtue of such appeal,* have either a constitutional or a statutory right to a jury trial in the district court?"

Mr. Justice Matson speaking for the court referred to the statement by Mr. Justice Mitchell in State ex rel. Erickson v. West, 42 Minn. 147, 152, 43 N. W. 845, 847, where, in regard to offenses involving the violation of municipal ordinances to which a penalty is attached, he said:

"* * * *A municipal ordinance is as much a law for the protection of the public as is a criminal statute of the state,* the only difference being that the one is designed for the protection of the municipality and the other for the protection of the *whole* state, and in both cases alike the punishment is imposed for the violation of a public law." (Italics supplied.)

Mr. Justice Matson went on to explain that criminal prosecutions in the case of municipal ordinances did in fact fall outside our constitution, not because they are noncriminal but purely for historical reasons; that ordinance violations at common law, and prior to the adoption of our Federal and state constitutions, were placed in an entirely different category from violations of laws enacted for the protection of the realm as a whole. The following summary of their historical background was given in explanation of why proceedings for the enforcement of criminal ordinance violations have been treated as civil cases (248 Minn. 177, 79 N. W. [2d] 139):

"Prior to the adoption of the constitution, the right of jury trial existed under territorial law only with respect to those criminal prosecutions relating to acts which by statute had been made offenses against

the peace and dignity of the state *as a whole* and not to those offenses involving nothing more than a violation of municipal police regulations or ordinances. These so-called petty offenses had always theretofore been punishable by magisterial officers, in a summary way, without a jury, both in England and in the Colonies. In fact, prior to the adoption of the constitution, despite the intrinsically criminal character of certain ordinance violations, proceedings for their enforcement were treated as civil actions; the majority of states have regarded them as civil actions for the recovery of a debt. Clearly, ordinance violations at common law, and prior to the adoption of our Federal and state constitutions, were placed in an entirely different category from violations enacted for the protection of the realm as a whole. Instead of trying to distinguish such ordinances on the basis that they are civil, non-criminal, or quasi-criminal, it should be frankly recognized that they are criminal enactments which are historically sui generis."

While it was decided that defendant was not entitled to a jury trial in the Ketterer case, the following significant statement was made in that opinion (248 Minn. 179, 79 N. W. [2d] 140):

"In view of the fact that the defendant has no *constitutional* right to a jury trial upon appeal, that right, if it exists at all, must be found in our statutes. Whether an alleged violator of a city ordinance is to enjoy the right to a jury trial, *at any court level,* is a matter solely within the discretion of the legislature. On the municipal court level the legislature has chosen expressly to deny it. Section 488.09 provides that:

" '* * * and all cases arising under the charter, ordinances, or by-laws of such city or village shall be tried by the court without a jury.' "

In State v. Hoben, 256 Minn. 436, 443, 98 N. W. (2d) 813, 818, we gave the Ketterer case thorough consideration, and in a footnote we commented:

"It may be something more than coincidence that at a session of the legislature following the publication of the Ketterer decision a law was enacted providing that a person convicted of a violation of a municipal ordinance may appeal to the district court 'in the same manner

and with the same effect as provided by Minnesota Statutes 1957, Chapter 633, except that *the appellant shall have the right to a jury trial.'* * * * L. 1959, c. 388 (M. S. A. 484.471)."

Although in the Hoben case a defendant was held to be entitled to a jury trial in municipal court, in State ex rel. Sheahan v. Mulally, 257 Minn. 27, 99 N. W. (2d) 892, this court came to the conclusion that a defendant charged with violating an ordinance prohibiting disorderly conduct was not entitled to a jury trial in municipal court since the Hoben case applies only to violations of the Highway Traffic Regulation Act. Mr. Justice Murphy, author of both opinions, said in the Sheahan case (257 Minn. 30, 99 N. W. [2d] 894):

"* * * we held in the Hoben case that under the provisions of c. 169 prosecutions of traffic violations are to have uniform treatment throughout the state and that therefore a defendant charged with a violation of an ordinance relating to that subject is entitled to a jury trial in the court where he is originally charged. It follows that under § 484.471 in prosecutions for the violation of other ordinances a jury trial is secured to the defendant on appeal to the district court. That appears to be the present state of the law. Counsel for the petitioner, however, suggests that a more satisfactory arrangement for the prosecution of ordinance violations would be to have all jury trials held on appeal in the district court. However desirable such an arrangement might be, it is a matter to be addressed to the legislature and it is not within the province of this court to make that determination."

■ It is unlawful under Minneapolis City Charter and Ordinances (Perm. ed.) 9:1-205.7:

"For any resident or non-resident whose driver's license or right or privilege to operate a motor vehicle in this state has been suspended, revoked, or canceled, to operate a motor vehicle in this state under a license, permit, or registration certificate issued by any other jurisdiction or otherwise during such suspension, or after such revocation until a new license is obtained."

The foregoing is qualified by § 9:1-211 which reads:

"No person shall drive a motor vehicle as a chauffeur upon the pub-

lic streets or highways of the City of Minneapolis, unless such person shall have secured a chauffeur's license from the Secretary of State * * *."

Section 9:1-212 provides:

"The term 'chauffeur' as used in this ordinance, means and includes:

"212.1. Every person, including the owner, who operates a motor vehicle while it is in use as a carrier of persons or *property for hire;*

"212.2. Every person who is employed for the principal purpose of operating a passenger vehicle;

"212.3. Every employee who, in the course of his employment, operates upon the streets or highways a truck, tractor, or truck-tractor belonging to another, *with the exception of those light cars classified as trucks which are only used to carry tools, repairs, or light materials used by the driver in his employment * * *."* (Italics supplied.)

The statutory counterpart of §§ 9:1-211 and 9:1-212 is Minn. St. 168.39, which states:

"No person shall drive a motor vehicle as a chauffeur upon any public highway in this state unless he be licensed by the secretary of state, * * *.

"The term 'chauffeur,' as used in sections 168.39 to 168.44 includes:

"(1) Every person, including the owner, who operates a motor vehicle while it is in use as a carrier of persons or property for hire;

"(2) Every person who is employed for the principal purpose of operating a passenger vehicle;

"(3) Every employee who, in the course of his employment, operates upon the streets or highways a truck, tractor or truck-tractor, belonging to another and

"(4) Every person who drives a school bus transporting school children:

"But does not include employees who, in the course of their employment, operate upon the streets or highways light trucks classified as pickups, panels and sedan deliveries which are used only to carry tools, repairs, light materials and equipment *used by the driver in the furtherance of some other and principal occupation, * * *."* (Italics supplied.)

It is conceded by both parties that relator at the time of the accident was driving a panel truck. A truck is defined by § 168.011, subd. 10, as follows:

" 'Truck' means any motor vehicle designed and used for carrying things other than passengers."

See, City of Bemidji v. Wenger, 249 Minn. 525, 83 N. W. (2d) 111.

Minneapolis City Charter and Ordinances (Perm. ed.) 9:1-155 defines a truck as follows:

"Every motor vehicle designed, used or maintained primarily for the transportation of property."

We think it evident from the foregoing definitions that the term "truck" as used in both statute and ordinances would include a panel truck such as was used by relator. The primary purpose of the vehicle is not that of carrying passengers since by its very design it has been built primarily to carry small property. The relator's regular driver's license had been suspended prior to the time of the accident. He had secured a chauffeur's license from the secretary of state as required by Minn. St. 168.39. Although no decision appears to be available, the attorney general in an opinion dated February 10, 1950, has held that a person whose driver's license was revoked but who had a chauffeur's license could operate a motor vehicle as a chauffeur during the suspension of his driver's license. Opinion Attorney General, No. 635-D. Since there is no decision in point, the attorney general's opinion carries considerable weight. We think it self-evident that if relator was at the time acting in the furtherance of his master's business the charge might, depending on all the facts adduced at the trial, be unwarranted. There appears to be some question as to whether relator qualifies as a chauffeur under the ordinances.

Minn. St. c. 168, dealing with motor vehicle registration, does not have a provision similar to § 169.03.

It is well established that an ordinance must not be unreasonable nor inconsistent with state law or the Federal or state constitutions. When there is found to be variance between the state statutes or the state constitution and the ordinance of a municipality, the local law

must give way. See 13 Dunnell, Dig. (3 ed.) § 6752, and the cases collected therein. Whether such an inconsistency exists here presents both questions of fact and of law. On their face Minn. St. 168.39 and subsection 9:1-212.3 of the ordinance appear irreconcilable. If they are, the effect would be to nullify the charge under §, 9:1-205.

Relator, however, contends that he is entitled to a jury trial on the charge of unlawfully driving after revocation of his regular driver's license since he was carrying a chauffeur's license in compliance with Minn. St. 168.39.

Under the holdings in State v. Ketterer, *supra,* and State ex rel. Sheahan v. Mulally, *supra,* it is clear that the defendant has no constitutional right to a jury trial in the municipal court on the charge of driving without a license. As we pointed out in State v. Hoben, *supra,* whether an alleged violator of an ordinance is to enjoy the right to a jury trial at any court level is a matter solely within the discretion of the legislature. On the municipal court level thus far the legislature has not chosen to grant it.

The effect of the Ketterer decision was modified by the legislature through the enactment of L. 1959, c. 388,[1] quoted above, which assures relator the right to a jury trial upon appeal should he be convicted of violation of an ordinance in municipal court.

A reading of the Hoben and Sheahan cases makes it clear that § 9:1-212 of the Minneapolis City Charter and Ordinances and Minn. St. 168.39 do not come within the purview of the Hoben decision.

---

[1]This statute was amended by L. 1961, c. 683, § 7 (Minn. St. 484.63), to provide: "Any person convicted of a violation of a municipal ordinance in any court may appeal from the conviction to the district court in the same manner and with the same effect as provided by Minnesota Statutes 1957, Chapter 633, except that the appellant shall have the right to a jury trial if he was not tried by jury in the municipal court."

L. 1961, c. 683, § 6 (Minn. St. 488.20), dealing with appeals from municipal court to district court, makes it plain that a defendant is entitled to only one jury trial. It provides in part: "On appeal to district court the appellant shall not be entitled to a trial by jury if trial by jury was held in municipal court."

L. 1961, c. 683, took effect on July 1, 1961, and of course does not apply to this case.

Subsection 9:1-205.7 of Minneapolis City Charter and Ordinances is apparently a counterpart of Minn. St. 171.24, which provides the penalty for driving after revocation of a driver's license. This being true, the charge of driving after suspension does not fall within the scope of the Hoben decision nor within Minn. St. 169.03, which applies only to the provisions of c. 169. It was ruled by the attorney general several years ago that a "[c]ity may enact ordinance providing penalty for person driving without license after license is revoked by Commissioner of Highways." Opinion Attorney General, No. 199-B-4, August 4, 1944. We are not advised that this ruling has been disputed or changed.·

▆▆▆. The state contends that a writ of prohibition is not a writ of right but is discretionary only and that relator's proper remedy is by appeal.

To establish that he is entitled to the issuance of a writ of prohibition, relator must show: (1) That the court, officer, or person is about to exercise judicial or quasi-judicial power; (2) that the exercise of such power is unauthorized by law; and (3) that it will result in injury for which there is no other adequate remedy. We have repeatedly held that these three elements are essential and that if the relator fails to establish any one of them the writ must be denied. Marine v. Whipple, 259 Minn. 18, 104 N. W. (2d) 657.

In State ex rel. United Elec. R. & M. Workers v. Enersen, 230 Minn. 427, 438, 42 N. W. (2d) 25, 31, we said:

"* * * A writ of prohibition is an extraordinary writ issued out of this court for the purpose of keeping inferior courts or tribunals or other officials invested with judicial or quasi-judicial authority from going beyond their jurisdiction."

If relator has been denied any fundamental rights and seeks correction through the issuance of a writ of prohibition, he must first show that he is without remedy in the sense that no other relief is available whereby he can obtain substantial justice.

L. 1959, c. 388 (Minn. St. 484.471), has effected a modification of the law as to violations of municipal ordinances since the Ketterer decision was written. It is also clear from the decisions cited herein

that there is no constitutional right to a jury trial for violation of an ordinance.

As has been shown, under L. 1959, c. 388, applicable here, the right of appeal to district court is available to a defendant convicted of a violation of a municipal ordinance and, if he has not had a jury trial in the municipal court, he may demand a jury trial upon the appeal.

On the first charge, that of following too closely, a jury trial has been made available to relator at the municipal court level. On the second charge, driving after suspension of his driver's license, relator may appeal to the district court if convicted and have a jury trial at the district court level. Relator has therefore not established the three essentials to entitle him to have the writ of prohibition made absolute.

Writ discharged.