**James E. ANDERSON, Respondent,**

v.

**Stephen BLAIR, Appellant.**

**No. C1–84–520.**

Court of Appeals of Minnesota.

Dec. 4, 1984.

Steven A. Nelson, Nelson, Larsen & Bowman, International Falls, for respondent.

Kenneth Gleason, Mahoney, Dougherty & Mahoney, Minneapolis, Steven M. Sher-

moen, Shermoen & Leduc, International Falls, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This appeal arises from an action brought by James E. Anderson against Stephen Blair to recover for personal injuries sustained in an automobile accident. Blair moved to dismiss the action, claiming that a valid settlement had been reached. The trial court denied the motion. Judgment was entered against Blair pursuant to the jury's verdict. Blair moved for an order reducing the judgment to accord with the claimed pre-trial settlement, granting a new trial, or for remittitur. The trial court denied the motions, and Blair appealed. Because the appeal from the post-trial order was dismissed as untimely, review is limited to the judgment and the pre-trial order denying the motion to dismiss.

We affirm.

## FACTS

James E. Anderson was injured in an automobile accident when Stephen Blair drove his automobile across the centerline into Anderson's motor vehicle. Prior to the accident, Blair had been drinking beer and mixed drinks at three local bars known as the Border Bowl Lounge, Scotty's Place, and The Road House. Following the accident, Blair was taken to jail and was charged with driving while under the influence (DWI) and assault for striking a police officer. Initially, Blair pled not guilty to the DWI charge but changed his plea to guilty during that trial. The assault charge was dismissed.

As a result of the accident, Anderson suffered muscle spasms and restricted mobility of the neck. These injuries caused him difficulty in his job as a painter. Anderson was treated for these injuries during the year following the accident by Dr. W.S. Pollard. Approximately one and one-half years after the accident, Dr. Pollard again examined Anderson on August 26th and immediately concluded that the injuries were more serious than he had previously thought. A myelogram was done which confirmed that Anderson was suffering from a cervical disc injury. A few weeks later surgery was performed in which an anterior fusion of the fifth and sixth vertebrae was carried out. After the operation, Dr. Pollard increased Anderson's disability rating from 10 percent to 15 to 20 percent due to loss of function, noting that the disability rating would be increased as high as 60 percent for activities such as painting ceilings. Dr. Pollard testified at trial that he didn't believe that Anderson could perform certain work in the painting trade requiring particular body positions.

Anderson filed suit against Blair, and the three bars where Blair had been drinking were named as third-party defendants. (Subsequently, Anderson joined issue against the bars directly.) Anderson settled with the Border Bowl and Scotty's Place.

On August 23, 1982, the parties' attorneys orally agreed to a settlement under which Blair's insurance carrier would contribute $10,000 and The Road House would contribute $6,000. On August 26, Blair's attorney mailed a $10,000 check and release forms to Anderson's attorney, who received them a few days later. Also on August 26, however, Anderson underwent a physical exam. On the basis of that exam, Dr. Pollard determined that Anderson's injuries were more serious than previously thought and that surgery was required. Dr. Pollard immediately (August 26th) called Anderson's attorney to inform him of his findings. Anderson's attorney immediately (August 26th) telephoned Blair's attorney and informed him the proposed (August 23rd) settlement was no longer acceptable. At the same time, he confirmed the telephone conversation by a letter rejecting the settlement. Anderson never signed the release forms or negotiat-

ed the $10,000 check after it came to his attorney's office.

In September, surgery was performed, and Dr. Pollard increased Anderson's disability rating. The case went to trial in December.

Blair moved to dismiss the action on the basis that it had been fully compromised and settled by all of the parties. The motion was denied on the condition that Anderson pay for attorney fees Blair incurred in bringing the motion and negotiating the settlement. Anderson paid those fees, and Blair accepted the payment.

At the opening of trial, the court ruled that there would be no mention of Blair's plea of guilty to the DWI charge and no mention of a previous criminal trial. During cross examination, Anderson's attorney asked Blair:

Q. But isn't it true that you denied at one point in time that you were drunk or at least under the influence at the time this accident occurred?

A. I never denied that I wasn't under the influence.

Anderson's counsel then approached the bench and asked the court to allow the introduction of Blair's not guilty plea to DWI. The trial court instructed the jury that Blair had pled not guilty to driving while under the influence, and explained that this was Blair's constitutional right. The court informed the jury that before the verdict in that case, Blair changed his plea to guilty.

The jury returned a verdict of $117,000, with 90 percent of that amount, or $105,-300, attributable to Blair, and 10 percent attributable to The Road House. Plaintiff settled with The Road House for $15,000 during the trial.

### ISSUES

1. Whether the oral agreement reached by the parties should be enforced as a final and valid settlement?

2. Whether the trial court erred in instructing the jury regarding Blair's DWI conviction?

3. Whether the damages are excessive?

4. Whether a new trial is required to avoid injustice concerning the apportionment of damages?

### ANALYSIS

#### I.

*Settled case*

■ The trial court, in allowing the case to go to trial, determined that a valid settlement was not reached. The trial court had only the briefs and affidavits of both parties' attorneys before it at the motion hearing. The affidavits agreed as to the sequence of events regarding a proposed settlement. It is undisputed that the parties agreed on a sum of $16,000: $10,000 to be contributed by Blair, and $6,000 from The Road House. There was no assertion that there was discussion of, or intent to include, both known and unknown injuries in the settlement. Although Blair's attorney forwarded a $10,000 check and release forms to Anderson's attorney, they had not been received at the time Anderson's attorney informed Blair's attorney the agreement was no longer acceptable. The check was not negotiated and the release forms never signed; the $6,000 check from The Road House was never even sent to Anderson's attorney.

■ Although the trial court's orders denying the motion to dismiss contained no specific findings or any explanatory memorandum, the evidence was sufficient to support the trial court's finding that a valid settlement had not been reached. Where there is a dispute as to whether a settlement was reached, it is ordinarily for the trial court to determine what the facts are. *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963).

In deciding that an enforceable settlement was not reached by the parties, we do not find it necessary to decide whether Anderson could have avoided a completed settlement by claiming unknown injuries.

We also note that Blair acquiesced in the trial court's pre-trial order denying his motion to dismiss by accepting payment of attorney's fees from Anderson. As part of his motion to dismiss, claiming a settled case, Blair's attorney argued that his insurance company client had to pay him legal fees for negotiating a settlement he thought he had. The trial court agreed there was at least some merit in that argument as the court conditioned its denial of Blair's motion to dismiss upon payment of some costs and attorney fees by plaintiff's attorney to defense counsel should Blair exercise his option to file for costs and attorney fees. Blair did. *See Eckerly v. Lake Region Sign Co.*, 275 Minn. 520, 148 N.W.2d 158 (1967).

## II.

### *Traffic conviction in a civil case*

█ The trial court erred in instructing the jury regarding Blair's DWI conviction. Minn.Stat. § 169.94, subd. 1 (1982) provides that a traffic violation is not admissible as evidence in any civil action. Minn.Stat. § 169.94, subd. 2 prohibits the use of a traffic violation conviction, less than a felony, to impair the credibility of a witness in any civil or criminal proceeding. The Minnesota Supreme Court has held that this statute prohibits asking a plaintiff in an automobile accident case whether he had pleaded guilty to a traffic violation arising out of the accident. *Warren v. Marsh*, 215 Minn. 615, 11 N.W.2d 528 (1943).

Anderson argued, and the trial court agreed, that traffic convictions can be introduced into evidence for other relevant purposes based on *Bemidji v. Wenger.* There the court held that a conviction for a traffic violation may be admitted for other relevant purposes in a criminal proceeding, even though the statute prevents its use to impair the credibility of a witness. *City of Bemidji v. Wenger,* 249 Minn. 525, 530, 83 N.W.2d 111, 114 (1957). *Bemidji* is not applicable here for two reasons. First, this action is a civil action, not a criminal proceeding. Minn.Stat. § 169.94, subd. 1, applies exclusively to civil actions, and specifically states

No record of the conviction of any person for any violation of this chapter shall be admissible as evidence in any court in any civil action.

Subdivision 2 of that statute provides:

The conviction of a person upon a charge of violating any provision of this chapter or other traffic regulation less than a felony shall not affect or impair the credibility of such person as a witness in any civil or criminal proceeding.

Subdivision 2 does not provide an exception to the first subdivision's prohibition, but further precludes the use of misdemeanor convictions to impair the credibility of witnesses in both civil and criminal proceedings.

Secondly, *Bemidji* is not analagous to the fact situation presented here. The defendant in *Bemidji* was charged with driving after revocation, and the State introduced defendant's prior traffic convictions for the sole purpose of establishing that defendant had no license to drive. No such relevant purpose exists here.

█ Although the admission of the DWI conviction was error, here it is not a ground for a new trial. A new trial will not be ordered because of nonprejudicial error in instruction. *Hlubeck v. Beeler,* 214 Minn. 484, 488, 9 N.W.2d 252, 254 (1943). Appellant himself introduced much evidence at trial to establish that he was intoxicated at the time of the accident in order to shift blame, under the dram shop laws, to the bars that had served him. Any prejudice to the appellant was established by his own presentation of evidence.

## III.

### *Damages*

█ Generally an appellate court will not interfere with a damage award unless failure to do so would be shocking and result in injustice. *Dawydowycz v. Quady,* 300 Minn. 436, 440, 220 N.W.2d 478, 480 (1974); *see also Line v. Nouri,* 298 Minn. 269, 276,

215 N.W.2d 52, 56 (1974); *Young v. Hansen*, 296 Minn. 430, 435, 209 N.W.2d 392, 396 (1973).

■ Here, appellant claims that the monetary award was grossly excessive and much larger than other verdicts in the same community for similar injuries. We agree with the trial court that the damage award was not excessive considering the injuries sustained. Respondent sustained a ruptured cervical disc which required surgery to remove the disc and fuse two cervical vertebrae. Respondent was employed as a painter and as a result of his condition he could not function at full capacity. The award of $117,000 is fair; it is not shocking.

■ Appellant also claims the award demonstrates passion and prejudice on the part of the jury. He argues that introduction into evidence of the DWI conviction, coupled with the fact the trial took place during Christmas week, raises suspicions regarding the damage award.

A new trial can be granted for excessive damages appearing to have been given under the influence of passion or prejudice. Minn.R.Civ.P. 59.01(5). The trial court noted in its well reasoned memorandum that it saw nothing to indicate passion or prejudice on the part of the jury. Evidence of the DWI conviction should not have unduly influenced the jury in light of evidence introduced by appellant himself as to his intoxicated state.

## IV.

*Comparative negligence*

■ The apportionment of causal negligence is inherently the function of the factfinder. *Reiger v. Zackoski*, 321 N.W.2d 16, 24 (Minn.1982); *see, e.g., Campion v. Knutson*, 307 Minn. 263, 269, 239 N.W.2d 248, 251 (1976).

■ While the 10 percent apportionment to The Road House is arguably low, we decline to substitute our judgment for that of the jury. There is nothing in the record to indicate the jury's allocation was

totally unfounded or unjust; evidence of appellant's negligence was sufficient to warrant allocation of 90% to him.

## DECISION

Affirmed.