**Michael BOIE, Appellant,**

v.

**Alfred MELCHERT, Respondent.**

**No. CX–86–1542.**

Court of Appeals of Minnesota.

March 24, 1987.

Review Denied May 20, 1987.

Robert D. Stoneburner, Paynesville, for appellant.

Paul J. Wocken, Kirby A. Dahl, Willenbring, Lickteig & Dahl, Cold Spring, for respondent.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and NIERENGARTEN, JJ.

### MEMORANDUM OPINION

WOZNIAK, Judge.

Appellant Michael Boie appeals from a posttrial order denying his motion for a new trial or JNOV on his claim that the jury erred in finding him 60% negligent for the farming accident which caused his wrist fracture. We affirm.

### FACTS

On April 23, 1983, 18–year-old Boie was working on respondent Alfred Melchert's farm helping Melchert clean out the barn. Melchert was driving a Bobcat loader, and Boie was on foot. Melchert would back the Bobcat into the barn and then drive forward into a dirty stall, scooping up manure with the machine. He would then back out of the stall and drive forward out of the barn to dump the manure on a pile. Melchert directed Boie to place clean straw in the stalls after the dirty straw was re-

moved, shovel the manure out of the corners of the barn, and keep the young calves away from the area where Melchert was operating the Bobcat.

Shortly before the accident, Boie noticed that the calves had loosened a gate which kept them away from the area where the parties were working. Boie tried to reposition the gate and began to tie it to a barn post with a piece of twine. As Boie was tying the gate, Melchert was backing the Bobcat into the barn for another scoop, not looking to the rear. Melchert struck Boie's wrist, catching it between the post and the Bobcat. Boie gave a yell and Melchert pulled the Bobcat forward.

Melchert's daughter took Boie to the Paynesville Clinic, where he was treated. He suffered a fractured wrist and had some postinjury pain, swelling and discomfort. He was treated by a general practitioner and orthopedic specialist after the injury and until September 1985.

Before the accident, Boie received room, board, and approximately $70 per week pay. After the accident, Boie remained on Melchert's farm for about one month, receiving room and board. He discontinued doing most of the chores he had previously performed. During that month, Melchert paid Boie a total of $40. Boie was unemployed after the accident for nearly seven months, and lived with his mother during most of that time. He had many jobs following this period of unemployment, each of them paying more than the Melchert job. He presently works as a long-haul trucker, earning $24,000 per year.

At trial, Boie's medical expert testified that Boie's fracture had completely healed, the x-rays were normal, there was no soft tissue residual damage, and no apparent loss of strength or nerve damage. While Boie's motion would improve in the future, the expert testified that he presently suffered a 10 percent partial permanent injury.

The jury found Boie 60% and Melchert 40% negligent, assessing damages in the amount of $2,500. The trial court denied Boie's posttrial motions for a new trial or JNOV.

## DECISION

This court may substitute its judgment for the jury's only when there is no evidence reasonably tending to sustain the verdict or if the verdict is manifestly and palpably against the weight of the evidence. *Otterness v. Horsley,* 263 N.W.2d 403, 405 (Minn.1978). We will not interfere with the jury's damage award unless failure to do so would be shocking and result in an injustice. *Anderson v. Blair,* 358 N.W.2d 708, 712 (Minn.Ct.App.1984). Boie argues the jury verdict was manifestly unfair in its apportionment of negligence and in its award of damages.

### A. Apportionment of Negligence

Boie argues that Melchert was negligent in driving the Bobcat with obstructed vision, and that the jury erred in failing to apportion more than half the damages to Melchert. The jury agreed that Melchert was negligent, but it also found Boie negligent. Prior to the accident, Melchert had warned Boie to be aware of the operator's presence, as the vision of the operator can be obstructed or limited. Boie testified he knew to be careful around a Bobcat because the driver had difficulty seeing and the Bobcat moved fast and suddenly. In addition, immediately after the accident and several times thereafter, Boie admitted fault for failure to keep a reasonable lookout and stated that Melchert was not at fault. Boie said he had operated the same equipment himself, and had personal knowledge of the limited view. The trial court judge stated, in ruling on posttrial motions, Boie "failed to do anything to avoid contact with the Bobcat, even though he knew the operator's visibility to the rear was limited." The record supports the jury's conclusion that both parties were negligent. That the jury divided the negligence, 60% Boie and 40% Melchert, is not shocking or palpably unfair.

B. Damages

■ Boie argues that the damage figure found by the jury was clearly in error. The jury found damages in the amount of $2,500, of which $1,117 accounted for stipulated medical bills and expenses. The trial court judge, in denying Boie's motion for a new trial or JNOV, evaluated the damages claim as follows:

> [Boie] contends that the jury's low award of damages is further indication of jury passion or prejudice. In this respect, [Boie's] credibility was a significant issue. While [Boie's] medical bills and expenses total $1,117, [Boie] made a significant claim for loss of wages, which was vigorously disputed by [Melchert]. Furthermore, [Boie's] purported residual difficulties with the injured wrist were apparently not accepted by the jury. [Boie] is now employed as an over-the-road truck driver, with earnings substantially in excess of what he was making as a farm laborer. His economic condition is actually better now than it was at the time of the accident. The jury apparently felt that [Boie] had not sustained any loss of earning capacity and that any pain and suffering would be adequately covered by the difference between [Boie's] medical bills of $1,117 and the jury verdict of $2,500.

The trial court's reasoning is sound on the issue of damages, particularly when Boie is not under a doctor's care, has no loss of strength, no nerve damage, and the fracture has healed. We agree with the trial court's decision.

Affirmed.