Mark STUTTGEN, Appellant,

v.

David GIPE, Respondent.

No. C3–86–1317.

Court of Appeals of Minnesota.

April 14, 1987.

Charles E. Spevacek, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Jeffrey O. Knutsen, Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for respondent.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Appellant Mark Stuttgen appeals from a posttrial order denying his motion for additur or, in the alternative, a new trial based on his claim that the jury awarded inadequate damages in his negligence action. We affirm.

## FACTS

On July 1, 1981, appellant Mark Stuttgen visited respondent David Gipe at Gipe's mobile home. During an argument, Gipe pushed Stuttgen onto a weakened portion of the deck attached to his mobile home. Stuttgen's foot went through the deck, causing him to fall, twisting his right knee. When Stuttgen fell, he heard a snap and felt a sharp pain in his knee. He went to the emergency room by ambulance, where his leg was x-rayed and put into a splint. Emergency room personnel told him to see his family doctor.

Stuttgen's family doctor referred him to an orthopedic specialist. The specialist found the fall had ripped three ligaments. Stuttgen was admitted to North Memorial Hospital and given medication to ease the pain. Surgery was performed soon after to sew the damaged ligaments together and staple the ligaments to the bone. The surgery left scarring on the inside tissue and outside skin of Stuttgen's knee. He was hospitalized for five days following the surgery.

After his release, Stuttgen wore a cast on his right leg for six weeks, a half-cast for two weeks, crutches for three months, and a brace during physical activity. Stuttgen had pain following surgery, but did not have to take pain medication after he was released from the hospital. At the specialist's instruction, he began his own physical therapy consisting of leg exercises. He did not report to a hospital or have an assistant for physical therapy. The specialist examined Stuttgen six times following the surgery. The parties stipulated that medical bills and expenses totaled $4,204.

Before the accident, Stuttgen had attended St. Cloud Vo-Tech in the morning and early afternoon, working the remainder of the day, 20–30 hours per week, at his father's business, Len's Well and Pump Service. While Stuttgen resumed his training at Vo-Tech about three days after his release from the hospital, he did not resume working until seven months following the accident. He testified that his injury prevented him from working. At $7 per hour for 20 to 30 hours a week, Stuttgen computed his wage loss at $3,500 to $5,250.

Stuttgen had a variety of jobs after the accident. At his employment at the time of trial, he lifted between 100 and 150 pounds regularly. He did not claim he is unable to do any type of work because of the accident.

At trial, the jury found plaintiff 50% negligent and awarded damages of $4,204 for stipulated medicals, and $4,000 for wage loss and general damages. In a posttrial order, the trial court denied Stuttgen's motion for additur or, in the alternative, a new trial.

## ISSUE

Was the jury's damage award manifestly and palpably contrary to the evidence presented?

## ANALYSIS

This court may substitute its judgment for the jury's only when no evidence tends to sustain the verdict or if the verdict is manifestly and palpably against the weight of the evidence. *Otterness v. Horsley*, 263 N.W.2d 403, 405 (Minn.1978). It will not interfere with the jury's damage award unless failure to do so would be shocking and result in an injustice. *Anderson v. Blair*, 358 N.W.2d 708, 712 (Minn.Ct.App.1984).

Stuttgen states the jury award of $4,000 for wage loss and general damages is manifestly and palpably contrary to the evidence. Specifically, Stuttgen argues that, since his estimate of lost wages of $3,500 to $5,250 was uncontroverted, the jury must have accepted at least the $3,500 figure. Therefore, he argues, the jury awarded only $500 for general damages, a nominal amount given the damages proven.

First, regarding the lost wages, appellant cannot assume that, since no direct evidence was presented contradicting his wage-loss figure, the jury accepted it. The jury is not required to believe the uncontroverted testimony where other circumstances in evidence discredit it. *Waite v. American Family Mutual Insurance Co.*, 352 N.W.2d 19, 22 (Minn.1984).

The jury could have believed that other circumstances discredited the wage-loss testimony. Stuttgen was unemployed for seven months, but went back to Vo-Tech three days after he returned from the hospital. The jury might have concluded he was also capable of returning to his employment at an earlier date than he did. Perhaps Stuttgen, as his father's employee, had no pressure to return to work immediately because his father would reserve the job for him.

Stuttgen himself was the only witness who testified that he could not work until January 1982. The specialist saw him in October 1981 and did not advise Stuttgen that he could not return to work. In fact, Stuttgen saw no doctor between October 1981 and January 1982 when Stuttgen himself decided he was ready to return to work. Stuttgen failed to prove a lack of earning capacity from October 1981 to January 1982. In addition, Stuttgen was repeatedly impeached. The jury may have concluded that his testimony regarding his inability to work was not credible.

In this case, in addition to the wage loss, the general damages award encompasses both the permanent partial disability and pain and suffering losses. As to permanent partial disability, the jury might not have awarded any damages. The expert specialist, who testified to a permanent disability of 20%, stated that the disability percentage is determined by what the patient can do in everyday activities. On cross-examination, the doctor admitted that he did not know that his patient went downhill skiing six or seven times, hunting once or twice, and participated in Kung Fu class twice a week in the year after the accident. Considering the activities, the doctor said that would change his estimate of disability, but neither party questioned the doctor about his revised percentage of disability. In addition, the medical expert's estimate of 20% disability was based, in part, on instability of the knee. The medical expert admitted under cross-examination that Stuttgen's knee did *not* measure any instability in medical testing conducted at Stuttgen's most recent exam. Based on these two admissions, the jury might have believed that Stuttgen had anywhere from zero to much less than 20% permanent disability.

Consequently, the jury verdict was not manifestly or palpably unfair. First, as noted above, the jury did not specify an amount of damages for wage loss. While certainly the injury was painful and caused the inconvenience of casts, crutches and braces, since the jury did not delineate the wage loss award, Stuttgen cannot conclude he was awarded only $500 in general damages.

The trial court notes that, had the case been tried without a jury, "the court would have been inclined to award damages in a somewhat higher amount"; however, it was "unable to find the award so grossly inadequate as to suggest passion or preju-

dice, and must in all conscience affirmatively find that the award is justified by the evidence." We agree with the trial court.

## DECISION

The jury's award of damages was not palpably unfair, and the trial court's denial of appellant's posttrial motions is affirmed.

Affirmed.