STATE of Minnesota, Respondent,

v.

Lawrence A. WILLIAMS and David N. Peterson, Appellants.

No. C3–87–243.

Court of Appeals of Minnesota.

Nov. 17, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert Alston, Minneapolis City Atty., Karl Van D'Elden, Asst. City Atty., Minneapolis, for respondent.

Scott J. Strouts, Minneapolis, for appellants.

Heard, considered and decided by WOZNIAK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court found that both appellants violated Minn.Stat. § 169.06, subd. 4 by turning their taxicabs from 7th Street onto Nicollet Mall in Minneapolis, where NO TURNS signs are prominently posted. Appellants contend that the state introduced insufficient evidence the signs were official traffic control devices. They also assert their conduct was governed only by Minneapolis ordinances, not Minnesota statutes, and that Minneapolis ordinances do not prohibit turns by taxicabs onto Nicollet Mall. We affirm.

## FACTS

On October 8, 1986, Minneapolis Sergeant O'Brien stopped and ticketed Lawrence A. Williams after observing Williams turn his taxicab from 7th Street onto Nicollet Mall in downtown Minneapolis. O'Brien testified that this intersection is posted with "NO TURNS" signs on either side of the street on the semaphores. Sergeant O'Brien similarly stopped David Peterson and issued him a citation after Peterson turned in his taxicab from 7th Street onto southbound Nicollet Mall, on October 17, 1986. Both appellants were charged with failure to obey traffic signs prohibiting turns, under Minn.Stat. § 169.06, subd. 4 (1986).

Both cases came on for trial before District Judge Gary Larson on December 17, 1986. Sergeant O'Brien testified that he has been with the Minneapolis Police Department for 24 years. He testified that Williams was traveling on 7th Street and turned left onto Nicollet Mall when O'Brien stopped and ticketed him. After his testimony, the parties stipulated to the following facts:

(1) Both parties were driving taxicabs on 7th Street in downtown Minneapolis, on different dates, and turned westbound onto Nicollet Mall.

(2) Both parties were observed and ticketed by Sergeant O'Brien.

(3) Williams was responding to a call for passengers located on Nicollet Mall when he made the turn.

(4) Peterson had passengers in his taxicab and was taking them to a location on Nicollet Mall when he made the turn.

The parties agreed that the only issues were issues of law.

Appellants argued at trial that (1) the state did not meet its burden of proof that the traffic sign in question was an "official traffic control device," as required by the statute; (2) appellants could not be charged under the Minnesota statute governing prohibited turns because Nicollet Mall is governed exclusively by Minneapolis city ordinances, as authorized by the state; and (3) the Minneapolis ordinance prohibiting turns onto Nicollet Mall between Washington and

Tenth Avenues does not apply to turns by taxicabs which are picking up or discharging passengers.

As to the first argument, appellants contended at trial that the state should have introduced additional evidence that the sign is an "official traffic control device," or that "the sign was approved by the commissioner, by the city council or is in fact consistent with the manual," as required by Minn.Stat. § 169.06, subd. 4(a). The state did not introduce any evidence or testimony to this effect. Sergeant O'Brien testified that NO TURNS signs were posted on the semaphores at the intersection of South 7th Street and Nicollet Mall.

The trial court found that the facts were as stipulated, and made an additional finding of fact that at the northwest corner of the intersection of Nicollet Mall and South 7th Street there is a sign posted on the stoplight which states "NO TURNS."

The court made the following conclusions of law:

1. The "NO TURNS" sign was an official traffic control device as defined in Minn.Stat. § 169.06, subd. 4.

2. Minn.Stat. § 430.011 authorizes a city council to adopt pedestrian mall ordinances to regulate traffic on malls, and that the "NO TURNS" signs were erected pursuant to such an ordinance.

3. The "NO TURNS" signs were placed at the intersection of Nicollet Mall and South 7th Street pursuant to Minneapolis Ordinance 439.20 which prohibits turns onto the mall except at Washington Avenue or South 10th Street.

4. Taxicabs are permitted on the mall under Minneapolis Code of Ordinances 439.20, but that a Minneapolis ordinance also restricts the use of the mall by prohibiting all vehicles from turning onto or off of the mall at any time except at Washington Avenue or South 10th Street.

The trial court found both Williams and Peterson guilty of violating Minn.Stat. § 169.06, subd. 4(a); both appeal.

## ISSUES

1. Did the state meet its burden of proof with sufficient evidence that the traffic sign was an official traffic control device within the meaning of the statute?

2. Did the Minnesota statute prohibiting turns in designated locations apply to appellants' turn onto Nicollet Mall?

3. Were appellants permitted under Minneapolis ordinances to turn onto Nicollet Mall at 7th Street?

## ANALYSIS

1. In evaluating the sufficiency of the evidence, the court must ascertain whether the jury could reasonably conclude from the evidence that defendant was guilty, having due regard for the state's burden of proving defendant's guilt beyond a reasonable doubt, and viewing the evidence in a light most favorable to the state. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978).

The undisputed evidence was that an officer observed "NO TURNS" posted prominently on 7th Street semaphores at Nicollet Mall, and that appellants turned onto the Mall at those locations. Appellants argue that the trial court had insufficient evidence to conclude that the signs were official traffic control devices erected by the appropriate road authority, within the meaning of the statute. Under section 169.01, subd. 41 (1986), "official traffic control devices" means "all signs, signals, markings, and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic."

Appellants contend the state made no prima facie showing that the signs were official traffic control devices such that the burden shifted to appellants to suggest why the signs were inadequate. We disagree.

The "NO TURNS" sign addresses a topic normally of public, not private interest: the turning of traffic onto public streets. This is a commonplace public traffic regulation. It is evident here that signs with a clear

and simple message were posted on public property, on semaphores, a prominent structure. Sergeant O'Brien identified the signs as the basis for his policing decision to issue tickets. These factors are sufficient to have shifted to the defendants the burden of suggesting any defect in the signs. *See State v. Dille,* 258 N.W.2d 565, 568 (Minn.1977) (where the prosecution provided "sufficient indicia of reliability" to establish the prima facie admissibility of blood test results, defendant has the duty to suggest a reason why the bood test was not reliable); *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn. Ct.App.1984) ("Once a prima facie showing of trustworthy administration [of the breathalyzer test] has occurred, it is 'incumbent upon defendant to suggest a reason why the * * * test was untrustworthy.'"). We think a prima facie case was established that both defendants made a turn where prohibited by official traffic control devices.

The statutory presumptions in section 169.06, subd. 4, work to the same effect:

(c) Whenever official traffic-control devices are placed in position approximately conforming to the requirements of this chapter, such devices shall be presumed to have been so placed by the official act or direction of lawful authority, unless the contrary shall be established by competent evidence.

(d) Any official traffic-control device placed pursuant to the provisions of this chapter and purporting to conform to the lawful requirements pertaining to such devices shall be presumed to comply with the requirements of this chapter, unless the contrary shall be established by competent evidence.

Minn.Stat. § 169.06, subd. 4(c), (d) (1986). When the underlying facts have been established, the burden shifts to the defendant to produce evidence that the traffic control devices have not been properly placed. For the same reasons stated above, we see a prima facie case under sections (c) and (d). The state's evidence was sufficient to establish the statutory presumption. In the absence of defendant raising any contrary evidence, the state does not have to go forward with more evidence. *See State v. Manley,* 353 N.W.2d 649, 652 (Minn.Ct.App.1984) (once defendant was charged with speed in excess of a posted speed limit, under section 169.06, subd. 4(c) "a presumption arose and the burden of going forward shifted to [the defendant]").

■ 2. Appellants contend that the Minnesota statute does not apply to them in a jurisdiction governed by Minneapolis ordinances because the state has granted Minneapolis the exclusive authority to regulate pedestrian malls in Minn.Stat. § 430.011, subds. 1, 2 (1986).

Minn.Stat. § 169.03, subds. 1 & 9 (1986) provides that the provisions of the chapter shall be applicable and uniform throughout the state and in all its political subdivisions and municipalities. *See State v. Hartman,* 261 Minn. 314, 316, 112 N.W.2d 340, 342 (1961).

"[A]bsent legislation to the contrary and absent discrimination against a particular class of defendants," a prosecutor has discretion to "prosecute under any statute that the defendant's acts violate." *State v. Chryst,* 320 N.W.2d 721, 722 (Minn.1982) (prosecutor may charge under either statute for the same offense even though they have different penalties). Therefore, appellants were validly charged under Minn. Stat. § 169.06, subd. 4.

■ 3. Appellants argue that their turns onto Nicollet Mall were permitted under Chapter 439 of the Minneapolis ordinances. By the plain language of the ordinance, it is evident appellants' conduct was proscribed under it. Taxicabs are permitted on Nicollet Mall under chapter 439 as specifically limited by language of an earlier (1966) ordinance. The latter ordinance allows taxicabs on the mall only to pick up or discharge passengers. It also limits turns onto and off of the mall:

Section 3. Subd. 1. Except as provided in Subd. 3 of this Section and except for Emergency Vehicles specified in paragraph (a) of Subd. 2, all vehicles are prohibited from turning onto or off of

such part of Nicollet Ave. at any time except at Washington Ave. or S. 10th St.

The earlier ordinance clearly states that all vehicles are prohibited from turning onto or off of Nicollet Mall except at Washington Avenue or South 10th Street. The only exceptions are emergency vehicles and exceptions provided under a subdivision permitting taxicabs to enter a certain parking lot entrance driveway at an unrelated part of Nicollet Mall.

The 1966 ordinance also contains language permitting use of Nicollet Avenue by taxicabs, and appellant contends the language is intended to overcome the provision on turns for any cab picking up or discharging passengers on the mall. Under appellants' proposed interpretation, taxicabs would be prohibited from turning onto the mall only when they had no passengers to pick up or discharge. We think it evident that the turn prohibition specifically states the primary rule and the exceptions for taxicabs are limited by that rule.

### DECISION

The evidence sustained the trial court's conclusion that both appellants made turns at an intersection where turns are prohibited by official traffic control devices. Appellants were properly convicted under the Minnesota statute.

Affirmed.